HANNAH HORNER *et al.*

*v.*

FRANCIS B. KEENE *et al.*

*Opinion filed December 21, 1898—Rehearing denied February 9, 1899.*

1. EASEMENTS—*an easement will not be presumed to be in gross.* An easement of right of way created or reserved by grant will not be presumed to be in gross if it can fairly be construed as appurtenant to the several parcels of land affected.

2. SAME—*when easement will be construed as appurtenant.* An easement of right of way reserved in a grant to a portion of a tract of land for the benefit of the remainder of such tract will be deemed appurtenant to the land of the grantor and binding on that con-

veyed to the grantee, and such right and burden will pass to and be binding upon all subsequent grantees of the respective tracts.

3. SAME—*determination of the scope of express easement involves a construction of the grant.* The determination of the extent of an easement granted or reserved in express terms by deed depends upon a proper construction of the language of the grant.

4. SAME—*language of deed creating easement of right of way construed.* A deed granting a "perpetual right of way" over a private alley does not limit the use of the alley to foot passage, but authorizes the use of the same for all reasonable purposes, including the use of teams when necessary.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. O. H. HORTON, Judge, presiding.

This was a bill in ·equity and for an injunction, filed in the circuit court of Cook county December 19, 1893, by Hannah Horner and Fannie Abson, against David Keene, Charles E. Cook, F. H. Bramner, (the agent of Francis B. Keene,) Thomas B. Bryan, Lewis B. Coburn, Julius Jonas and Alexander Officer. The bill alleged that Hannah Horner and Fannie Abson claimed an interest in a private alley, being the south 57¹⁹₁₂ feet of lot 4, assessor's division of lot 9, block 6, fractional section 15, addition to Chicago; that on December 28, 1853, Thomas B. Bryan owned the east 120.8 feet of lot 9, in said block 6, situate at the north-west corner of Wabash avenue and Jackson street, otherwise known as lots 1, 2, 3 and 4 of said assessor's division of lot 9, block 6; ·that lot 1 was 25 by 100 feet, lot 2 was 26 by 110 feet, and lot 3 was 25 feet 9 inches by 110; that lot 4 is 10.8 feet wide, and extends from the north line of Jackson street north 51.75 feet to the north line of lot 2, thence north 25 feet between parallel lines 20.8 feet apart to the north line of lot 9; that on February 10, 1855, Thomas B. Bryan conveyed lot 3 to William Bross; also the stable lot, being the north 19 feet of lot 4; also the "joint use" with Bryan and perpetual right of way 6 feet in width adjoining the east 10 feet of said stable lot, running from lot 1 to the private alley; also perpetual right of way 10.80 feet from the south line of said lot to

Jackson street; that Bryan built a brick residence on lot
3 and a stable on the stable lot and enclosed the rest of
lot 4 with fences, and lived on lot 3 until said deed to
Bross, using said alley as an access for his teams and
vehicles to the stable. The bill sets out the title of com-
plainant Hannah Horner. It alleges a deed from Bross
and wife February 13, 1856, to lot 3 and a stable lot, and
the same easements and right of way as in the deed from
Bryan to Bross; that Ebenezer Higgins and wife, on June
10, 1856, deeded to Van H. Higgins the same premises,
easements and right of way, and on January 1, 1862, Van
H. Higgins and wife conveyed by deed lot 3 and the stable
lot, and the same easements and right of way over said
alley, to Henry Horner, the husband of complainant; that
said Henry Horner died testate February 11, 1878, devis-
ing the same easements and rights of way to his wife,
Hannah Horner, one of the complainants. The bill fur-
ther alleges that Henry Horner was in the exclusive pos-
session of said premises until the great Chicago fire of
October, 1871, and complainant claims possession since
that time; that since the fire, and over twenty years ago,
the present brick building was built on the stable lot,
with a window facing on the 6 by 10 strip, on the south
side; that never, until a few years ago, has any part of
lot 4 been used by teams other than those belonging to
the owners of lot 3 and said stable, or for loading or un-
loading goods for stores on lot 1; that the store on lot 1
was erected in 1874 and the store on lot 2 in 1888; that
on March 1, 1892, complainant Fannie Abson leased said
stable building from Hannah Horner for a term of five
years, to be occupied as a restaurant, and has fitted it up
at great expense and built up a large and profitable busi-
ness, and has paved the alley; that in the spring of 1892
she erected a post at the Jackson street entrance of said
alley, where a gate stood before the fire, to prevent teams
from trespassing, and sets up the destruction of the post,
the excavation of the 6 by 10 strip, the construction and

maintenance of a trap-door over the same, the closing up of said window, and that it is a permanent injury; that since the Bryan conveyance said 6 by 10 strip has been used and treated as appurtenant to the north 19 feet of lot 4; that Bramner, as agent for Keene, has recently, with one Cook, deposited large quantities of rotten wood, dirt and other *debris* in front of oratrix's door and obstructed the approach to said restaurant, and excludes light and air from a window in the basement of the restaurant facing the 6 by 10 strip. The bill prays for an injunction restraining defendants from maintaining any obstruction on lot 4, or maintaining any stairway in the strip, or from leaving open any trap-door, or from placing any dirt on the strip, or from interfering with any post or gate to be placed at the Jackson street entrance of the alley, or from placing any team on any part of lot 4, or from using any part of the 6 by 10 strip except as a foot-way.

The following plat of assessor's subdivision of lot 9, block 6, was made an exhibit to the bill:

| 26 | 26 | 20.8 Horner Stable Lot. | 19 | Keene. *1* | 25 | |
|---|---|---|---|---|---|---|
| | | Strip. | 6 | 100 | | |
| 76.45 **6** | **5** | 10 *4* | | Coburn. *2* | 25 | WABASH AVENUE. |
| | | | | Horner. *8* | 25.15 | |
| Kimball. | Officer. | Alley. 10.8 | | 100 | | |

JACKSON STREET.

Francis B. Keene, the owner of lot 1 in subdivision of lot 9, in block 6, filed his answer under oath, claiming that all of lot 4, except the stable lot and the 6 by 10 strip, has always been used as a private alley for the

benefit of lots 1, 2, 3 and 5, and has been used as such by
said owners as occasion required; that the 6 by 10 strip
had been in the possession and control of the owners of
lot 1 and used by them since 1855, and used by them as
a passageway between lot 1 and the private alley; that
the right of way over said strip and over the private alley
was granted by Thomas B. Bryan to Luther Rossiter by
deed of April 24, 1855; denies that any part or all of said
6 by 10 strip has ever been in the exclusive possession
of any owner of lot 3 and of the stable lot; denies that
Henry Horner, and Hannah Horner since his death, have
had exclusive possession of all the alley and 6 by 10 strip
and paid taxes thereon, and alleges that the private alley
has always been used, since 1858, by the owners of all
the abutting lots, with teams, etc., as occasion required;
that defendant Keene removed the post because it in-
terfered with the common use of the alley; that prior to
the removal of the post the sidewalk had been of plank
for more than twenty years; that after the removal of
the post, and without consent of defendant Keene or any
other owner, complainants placed a stone pavement over
the sidewalk space, with the outer edge so raised as
to prevent access by teams to the alley from the street;
claims a right to alter the sidewalk to admit teams to
the alley; denies the trap-doors are dangerous or a nui-
sance, and denies that because the alley is only 10 feet
wide therefore the use is impracticable, but avers that it
is practicable to back teams in from Jackson street to
reach any of the lots; avers that for over twenty years
the 6 by 10 strip has been excavated, but that the exca-
vation had been gradually filled with *debris*, and that de-
fendant Keene directed this *debris* to be cleaned out and
a stairway built into the basement of the building on lot
1 and covered with trap-doors; that persons can easily
walk over the trap-doors without danger; claims that the
rights of Keene are matters of public record, and were
never disputed until 1892.

Francis B. Keene also filed his cross-bill March 28, 1894, setting up the original bill and answer, and that on April 24, 1855, Thomas B. Bryan owned and possessed at least 120.8 feet of lot 9, being lots 1, 2, 3 and 4 of lot 9; that Bryan by deed conveyed to Luther Rossiter, as trustee for Harriet V. Rossiter and Gilbert Rossiter, lot 1 of lot 9, also a perpetual right of way over the 6 by 10 strip to the private alley 10.8 feet wide and over the private alley to Jackson street; that at that time the north 19 feet of lot 4 was used as a stable lot by Bryan; that from the date of that deed to February 2, 1863, Harriet V. and Gilbert Rossiter occupied said strip and alley for general alley purposes; that on February 2, 1863, the said Rossiters conveyed by deed to James M. Cutler said lot 1 and rights of way; that Cutler and his tenants occupied said premises under his deed up to August 28, 1868, when on that date Cutler and wife conveyed lot 1 and rights of way to James H. Stead and Silas M. Moore; that Moore occupied said lot and used said rights of way up to June 6, 1870, when Moore and wife and Stead and wife conveyed lot 1 and rights of way to Potter Palmer; that on April 27, 1871, Potter Palmer and wife conveyed lot 1 and the same rights of way to Joseph P. Clarkson; that in October, 1871, the improvements on lot 1 were destroyed by fire and lot 1 remained vacant for about a year; that Clarkson erected a four-story brick building, covering all of lot 1; that at that time the 6 by 10 strip was excavated and the sides walled up with brick and the excavation used for an entrance to the cellar of lot 1, the excavation being covered by trap-doors when not used; that the said building and excavation remained afterwards as first constructed in 1872, and on March 23, 1877, Clarkson and wife conveyed lot 1 and the same rights of way to David Keene, who occupied the same until his death, in February, 1893, when he devised said lot 1 to Francis B. Keene, the complainant in the cross-bill. The cross-bill avers that at no time since the conveyance by Bryan, in 1855,

has any one objected to such use by the owners of lot 1 of said strip and private alley until 1892, and that during all that time said owners of lot 1 have used said private alley and strip for all purposes of an alley, including use of teams. The cross-bill further sets out that Fannie Abson, by the direction of Hannah Horner, in the latter part of 1892 paved the private alley with cement from the stable to Jackson street, erected a post at the Jackson street entrance, and built a storm door directly in front of the 6 by 10 strip, to the injury of Keene, and that she also caused the pavement to be extended at a height to cut off teams, and now for the first time claims a right to limit the use of the alley to foot passage only; that the right to use the alley and the connection with Jackson street for general alley purposes is of great value to Keene; that no person except Keene can have any possible use for the 6 by 10 strip except the occupants of the stable lot, who use the same for light and air; that lot 2 is owned by Lewis L. Coburn and occupied by his tenant, and lot 5 is owned by Alexander Officer. The answer under oath is waived, and asks that Abson and Horner be enjoined from interfering with the use by Keene of the 6 by 10 strip and the private alley for general private alley purposes. The cross-bill was amended, to the effect that Keene does not claim any rights by prescription in the 6 by 10 strip which he did not have by the original grant.

Answer was filed to the amended cross-bill. It admits that Bryan owned the east 120.8 feet of lot 9, being lots 1, 2, 3 and 4; that said 6 by 10 strip was many years ago partly excavated to afford light and air to a window of the stable building below the surface; that the owners of lot 1 used said excavation as a coal chute; denies that the owners of lot 1 have used the private alley since 1855 for all purposes, including teams, and claims a right to construct the storm door, but admits that complainants have not an exclusive use of the 6 by 10 strip.

Replication was filed by Keene to the answer to his cross-bill. Defaults *pro confesso* were entered as to Bryan, Coburn, Officer and Jonas, and the case was referred to a special commissioner. Objections were filed to the report of the special commissioner, and it was ordered that the objections filed before the special commissioner stand as exceptions. Upon final hearing the circuit court decreed as follows:

"It is therefore ordered, adjudged and decreed that the cross-complainant, Francis B. Keene, who is the owner of lot 1 in assessor's division of original lot 9, in block 6, in fractional section 15, addition to Chicago, in Cook county, Illinois, is possessed of, and he and his heirs and assigns are entitled to, a perpetual right of way appurtenant to said lot 1 over a private alley in the rear thereof, leading from said lot 1 to Jackson street, a public highway in the city of Chicago, Cook county aforesaid; that said private alley consists of a strip of ground 6 feet in width by 10 feet in length immediately west of and adjoining the south 6 feet of said lot 1, together with a strip of ground west thereof and connecting therewith 10.80 feet in width, beginning 19 feet south of the north line of lot 4, in the assessor's division, and running thence south an even width of 10.80 feet to Jackson street aforesaid, which strips of land are together otherwise known and described as all of lot 4 in said assessor's division, except the north 19 feet thereof; that the complainant Hannah Horner, who is the owner of lot 3 and the north 19 feet of lot 4, in said assessor's division, is also possessed of, and she and her heirs and assigns are entitled to, a like right of way appurtenant to her said lots over the same private alley connecting said lots with Jackson street; that neither of the rights of way aforesaid is exclusive of the other, but the owner of each, and his or her tenants, are entitled to use the same for any and all purposes reasonably necessary or convenient in connection

with his or her said premises, including the reasonable use of said private alley with teams and wagons, and for the shipping and receipt of merchandise through and over said alley to and from Jackson street aforesaid. It is further ordered, adjudged and decreed that complainants, Hannah Horner and Fannie Abson, within thirty days from the entry of this decree, remove, or cause to be removed, the storm door erected by them upon the private alley aforesaid in front of the building located upon the north 19 feet of lot 4 aforesaid, and that within the same time they remove, or cause to be removed, the cement sidewalk in front of the alley aforesaid, which, as hereinabove found by the court, constitutes an obstruction to the use of said alley, or that they cause the same to be reconstructed in such a manner as to afford safe and convenient access to and from the alley from Jackson street aforesaid. It is further ordered, adjudged and decreed that said complainants, Hannah Horner and Fannie Abson, their agents and servants, be and they are hereby perpetually enjoined and restrained from placing, or causing to be placed, any permanent obstruction whatsoever in or upon any part of said alley or the entrance thereto, and from in any manner interfering with any reasonable use of said alley by the owner or occupants of lot 1 aforesaid, with teams or otherwise. It is further ordered, adjudged and decreed that the cross-complainant, Francis B. Keene, within thirty days from the entry of this decree, remove the trap-doors upon the 6 feet by 10 feet space in the north-east corner of said alley and cover the excavation therein in a safe, substantial manner, so as to afford light and air to any window there may be in any of the buildings surrounding the same, and to afford safe and convenient passage over the same for all purposes that may be reasonably necessary or convenient. It is further ordered, adjudged and decreed that the original bill filed herein be and the same is hereby dismissed for want of equity at complainants' costs, and

that the cross-complainant, Francis B. Keene, have and recover of and from the complainants, Hannah Horner and Fannie Abson, his costs in this behalf expended to be taxed, and that execution issue therefor."

From this decree the complainants in the original bill have sued out a writ of error to this court, and ask a reversal of the same.

STORY, RUSSELL & STORY, for plaintiffs in error.

JOSEPH H. FITCH, for defendants in error.

Mr. JUSTICE CRAIG delivered the opinion of the court:

*First*—The principal question for determination in this case is, is the defendant Francis B. Keene, the owner of lot 1 in the subdivision of lot 9, block 6, of fractional section 15, addition to Chicago, entitled to a perpetual right of way with teams and wagons, equally with complainant Hannah Horner, the owner of lot 3, over the private alley appurtenant to lot 1 and in the rear thereof, leading to Jackson street, by virtue of the grant in the deed from Thomas B. Bryan to Rossiter and the successive deeds from Rossiter to David Keene?

The evidence shows that John W. Waughop, the then owner of the whole of original lot 9, conveyed the north 26 feet of the east 141 feet of the lot to Robert W. Patterson, and on August 1, 1853, Waughop conveyed the south 50 feet of the east 141 feet to Thomas B. Bryan. These premises include lot 3, all of lot 2 except the north foot of it, and all of lots 4 and 5. Bryan and Patterson then owned the whole of the east 141 feet of lot 9, with a frontage of 76 feet on Wabash avenue. Bryan built a brick house on the corner 25 feet, on what is sub-lot 3. Bryan and Patterson effected an exchange of lots. December 23, 1853, Patterson conveyed to Bryan the east 120.80 feet of the north 26 feet, being lot 1; also the north one foot of lot 2, and the north 26 feet of lot 4. Byran testifies:

"I do recall that in the transactions with Dr. Patterson I mentioned to him that he could get his coal in through the alley. I recall that fact, and I never shall forget a certain remark he made in respect to it; but it was a religious remark about 'Narrow is the way,' etc." This evidence shows Patterson, to whom lot 2 was conveyed, expected to have, and had, the right of way with teams in the alley as an incident to his ownership of his lot. In *Cihak* v. *Klekr*, 117 Ill. 643, this court held that where the owner of two tenements, or of an entire estate, has so arranged and adapted them that one tenement or one portion of the estate derives a benefit and advantage from the other, of a permanent, open and visible character, and he sells a portion of the property, the purchaser will take the tenement or portion sold, with all the benefits and burdens which so appear at the time of the sale to belong to it; that it is not necessary, in such case, that the easement claimed by the grantee must be really necessary for the enjoyment of the estate granted, but it is sufficient if it is highly convenient and beneficial therefor. See, also, *Newell* v. *Sass*, 142 Ill. 104.

It appears from the evidence that woodsheds were built about this time in the rear of the Patterson lot (lot 2) and in the rear of lot 3, with the rear wall of the sheds on the east line of the alley in controversy, with an opening or slide-door in the sheds for the purpose of getting in wood or coal from the alley. Bryan, by the deed from Waughop dated August 1, 1853, and the deed from Patterson dated December, 1853, for lot 1, owned lot 1, and also lots 3 and 4 and the stable lot, together with the 6 by 10 strip, and, owning the same, had the right of passage over the 6 by 10 strip and the right to use lot 4 as an alley for teaming purposes. Bryan, in his deed to William Bross dated February 10, 1855, conveyed lot 3, the north 19 feet of lot 4, (the stable lot,) and also the joint use of the 6 by 10 strip and right of way over the alley to Jackson street. The several conveyances

from Bross to Ebenezer Higgins and from Ebenezer Higgins to Van H. Higgins, describe the property and rights of way substantially the same as in the deed from Van H. Higgins to Henry Horner. The deed conveys lot 3, also the stable lot, also the use of right of way over the 6-foot strip, and "also the perpetual right of way over the said private alley, it being a strip of ground about 10.8 feet wide, running from the south line of said stable lot to Jackson street." After these conveyances Bryan still owned lot 1, 25 by 100 feet, east of the stable lot, and a lot 20 feet wide west of the private alley. In April, 1855, Bryan sold lot 1, 25 by 100 feet, east of the stable, to Luther Rossiter, which was described as follows: "The north 25 feet of the east 100 feet of said lot 9, together with the perpetual right of way over a strip of ground adjoining said part of lot on the south-west corner thereof, being 6 feet in width, and extending westwardly of an even width of 6 feet to a private alley of 10.80 feet in width running to Jackson street, together, also, with the perpetual right of way over said last named alley running north and south to Jackson street." In the successive deeds of Bryan to Rossiter, Rossiter to Cutler, Cutler to Stead and Moore, Stead and Moore to Potter Palmer, Palmer to Joseph P. Clarkson, and Clarkson to David Keene, there was in the grant substantially the same language of right of way over the alley to Jackson street.

Where an easement is granted or reserved in express terms by deed, the question then ordinarily is, what is the proper construction of the language of the deed? (Sheppard's Touchstone, 88.) From the language used in the deed from Bryan to Rossiter it was evidently the intention of the grantor to grant a perpetual right of way from said lot 1 to Jackson street for all the ordinary and usual purposes and uses of an alley. The grant did not limit the right of way to foot passage. This right of way was to be enjoyed with others having a similar right in the same alley and in the same strip of land. The

deed from Bryan to Bross of lot 3 and the stable lot granted the *joint use* of the 6 by 10 strip and right of way over the alley, and not the *exclusive use.* This deed was not in conflict with the joint use of the strip and alley to the respective grantees of lot 1. A reasonable right of way was to be enjoyed by the owners of lots abutting on this alley. Neither of the rights of way was exclusive of the other, but the complainant Hannah Horner, and the owner of lot 1, and the owners of the other lots abutting on the alley, and their tenants, are entitled to use the said alley for all reasonable and necessary purposes, including the reasonable use of said alley with teams.

If the deed from Bryan to Bross was intended to grant the exclusive use of the alley to Bross and his grantees when Bryan sold lot 1 to Rossiter, it is not reasonable to presume he would have granted a perpetual right of way over the same alley; but if the intention was to establish a right of way over lot 4 for the benefit of all subsequent owners, a reason can be found for each deed containing substantially the same grant of right of way. We are of the opinion, therefore, that the owners of lot 1 and the stable lot have a joint use of light and air and right of way over the 6 by 10 strip, and also a joint use of light and air in the excavation of the said 6 by 10 strip, and that the owner of lot 1 is entitled to a perpetual right of way appurtenant to said lot 1 over the private alley in the rear of said lot 1, leading from the 6 by 10 strip to Jackson street, for any and all purposes reasonably necessary or convenient to his premises, including the reasonable use of said private alley with teams, and that complainant, the owner of lot 3, is also possessed of and entitled to a like right of way appurtenant to her said lots over the said alley to Jackson street.

It is contended by plaintiffs in error, there being no terminus of the alley upon lot 1, that therefore the easement was in gross. A right of way will never be presumed to be in gross where it can fairly be construed as

appurtenant. (*Louisville and Nashville Railroad Co.* v. *Koelle*, 104 Ill. 455.) In *Whitney* v. *Union Railway Co.* 11 Gray, 365, the court defined a grant which may be regarded as appurtenant, as follows: "When it appears, by fair interpretation of the words of a grant, that it was the *intention* of the parties to create or reserve a right, in the nature of a servitude or easement, in the property granted, for the benefit of other land owned by the grantor, and originally forming, with the land conveyed, one parcel, such right will be deemed appurtenant to the land of the grantor and binding on that conveyed to the grantee, and the right and burden thus created will pass, respectively, to and be binding on all subsequent grantees of the respective lots of land." The deeds from Bryan down to Keene contained the same grant as in the deed from Bryan to Rossiter. The language used shows it was the intention to create a right of way over this alley to Jackson street, and this right will be deemed appurtenant to and binding on that conveyed to the grantee, and all subsequent grantees of the respective lots of land. In Washburn on Easements and Servitudes (p. 35, sec. 13,) it is said: "Where, therefore, one grants or reserves a right of easement over one parcel of land in favor of another, such easement, by such act of creation or annexation, would become incident and appurtenant to such estates respectively, and pass as appurtenant in after conveyances, by, or even without, the word 'appurtenances,' so long as such estates should subsist as distinct estates in different proprietors. Nor could the easement be separated from the principal estate, except by him who has a disposing power over the estate,"—citing *Ritger* v. *Parker*, 8 Cush. 145.

*Second*—Was the alley used for teaming purposes by the owners of the various lots abutting on this private alley on lot 4, from about December, 1853, until the complainant Fannie Abson put up the post at the entrance of the alley into Jackson street, in May, 1892?

Complainants introduced testimony for the purpose of proving that the owners of lot 3 had the exclusive use of the alley on lot 4 with teams, while defendants introduced evidence to show that the alley was used by the owners of other lots with teams. The master in chancery, on the question of the user or non-user of lot 4 as an alley with teams, divided the evidence on that subject into three periods: First period, from the date of the deed by · Dr. Patterson to Bryan of lot 1, in December, 1853, down to the date of the deed of lot 3 and the stable lot to Henry Horner, in January, 1862; second period, from January 1, 1862, to the time of the Chicago fire, October 9, 1871; third period, from October 9, 1871, to May 1, 1892.

The sworn answer of Francis B. Keene, the oath not having been waived, states this private alley had been used since 1855 by all the owners of all abutting lots, with teams, as occasion required. Gilbert Rossiter testified, for defendants, that he lived on lot 1 from 1855 to 1860, and had a rear entrance to lot 4, and used the alley to get wood into his lot, and that the teams usually backed in from Jackson street. William Higgins, a son of Ebenezer Higgins, testified by deposition, for the complainants, that only his father's teams used the alley. In 1856, when his father lived on lot 3, this son was only two years of age. He says that he was familiar with the property after he moved away, for he used to visit his uncle, Van H. Higgins, who then occupied the property. The evidence shows Van H. Higgins bought the property in 1856 and sold it to Horner in 1862, which would make the witness only eight years of age when his uncle moved from the property. This testimony, after the lapse of forty years, is entitled to little weight. Ebenezer Higgins, the father, who lived in Yazoo, Mississippi, testified, in his deposition, that he owned the Horner property and stable, having bought it in February, 1856, and sold it June 11, 1856, and his testimony related to only four months between these deeds, and he testified that the

other owners did not use the alley *to his knowledge.* This testimony is not sufficient to overcome the sworn answer of Francis B. Keene, and the positive testimony of Rossiter, that all the owners of abutting lots used the alley with teams, from 1853 to the date of the deed to Henry Horner, January 1, 1862, and sustains the finding of the master in chancery that there is no evidence during this period that the respective owners of lot 3 had the exclusive use for teams of lot 4, but that there was a preponderance of evidence that during part of that period lot 4 was used as an alley for teams by the owners of some of the other lots than that of lot 3 and the stable lot, and without objection.

The second period is from January 1, 1862, to the time of the Chicago fire, October 9, 1871. As to the use of lot 4 as an alley, with teams, we have examined the testimony of the witnesses, upon which the master in chancery based his report for this period of about nine years. The master reports that during this period there is no preponderance of evidence that the alley on lot 4 was used for teaming purposes exclusively by the Horners. While there is some evidence that after Henry Horner acquired lot 3 and the stable lot the gate at the Jackson street entrance to the alley (a gate erected by Bross) was kept padlocked and the key kept by the Horners, there was no preponderance of evidence that the Horners refused to allow the gate to be opened for the occupants of other lots. Addison Ballard, a witness for the cross-complainant, testified that he knew lot 1 from 1865 to 1871; that he owned 54 feet just north of it; that it was used as an alley for horses and wagons before the great fire of October, 1871, to get to the stables in the rear; that Officer and Kimball lived on lots 4 and 5, and there was a barn in the rear, and teams reached it from Jackson street through this alley, and that he himself had driven in the alley during this period when he was in the lumber business. The sworn answer also covered this

period, and states that all of lot 4, except the stable lot and the 6 by 10 strip, has always been used as a private alley with teams, for the benefit of the owners of lots 1, 2, 3 and 5, and has been used as occasion required. One witness for complainants testified he was in Europe for three years during this period, and that lot 4 was never used, *to his recollection,* by the occupants of lots 1 and 2. Some of the complainants' witnesses *never saw* any of the abutting owners use the alley during this time. The master finds there is some difference in the weight to be given to testimony,—between positive testimony that a man did use or saw others use the alley for teaming purposes, and the testimony of witnesses that they did not see or know of such use,—and finds there is a slight preponderance of evidence that Alexander Officer, occupying lot 5, and Addison Ballard, during this period used the alley on lot 4 for teaming purposes.

During the third period, from October 9, 1871, to May 1, 1892, the master found that the gate to the alley, together with all the buildings and improvements, was burned in the great fire, and that there is no evidence that there was any obstruction to the use of the alley with teams until about May 1, 1892,—nearly twenty-one years afterwards,—when Fannie Abson erected the post at the Jackson street entrance to the alley. We find that during this period there is evidence of the occupants of the various lots using the alley on lot 4 for teaming purposes. William H. Ditmer occupied the store on lot 1 in 1882 and 1883 for a restaurant, and he used the alley with express wagons to get in his provisions and for hauling out ashes, garbage, etc., and nobody ever objected; that Kimball & Co., wholesale glass men, occupied lot 5, and they used to back a wagon in to a door which opened into the alley, and loaded the wagon with glass; and that Edwards & Son, who occupied lot 2 as a carriage house, used the alley to bring in their conveyances. Morris H. Ellinger occupied lot 1 for thirteen years,—from 1878 to

1891,—as a picture frame manufacturer. He testifies he used the alley for shipping and receiving goods; that teams used to back in there; that he used it right along getting in coal and lumber; that he used to carry stuff through the 6 by 10 strip into the rear door; that no one ever objected to the use of the alley (with teams) until the barn was rented for a restaurant. Coburn and Bramner also testified to the use of the alley by teams. Coburn owned lot 2 since 1878, and he saw teams in the alley unloading into the building on lot 5, while Frederick H. Bramner, who took charge of the Keene property in 1889, testifies that he took out all the partitions on the three upper floors, and took out all the plaster, laths, etc., by teams through the alley and no one objected. He also testifies that Ellinger shipped most of his goods through the alley by teams at that time and for years afterwards. In 1889 Ellinger leased the property occupied by Abson, which was then a barn, and used the alley with express wagons, and nobody objected to such use. The master found that during this period of twenty-one years there was no evidence that there was any obstruction to the use of the alley with teams. The master's report was approved by the circuit court, and we think the evidence fully warranted the finding.

It was also alleged in the bill that Horner had paid all taxes upon the alley for more than thirty years. The stipulation in the record as to the tax receipts offered in evidence by Horner does not sustain this allegation. The receipts show that since 1868 Horner paid taxes only on the east 4½ feet of the south 25 feet, (*i. e.*, the half immediately abutting upon lot 3,) and the south 6 feet of the north 25 feet of the west half of lot 4, being a space 6 by 10 feet on the west side of the alley, immediately fronting the doorway of the barn, now the Abson restaurant. The evidence shows Horner did not pay the taxes on the portions of the alley abutting upon either of lots 1, 2 or 5. It also appears in evidence that on

March 26, 1868, Silas M. Moore, then the owner of lot 1, paid a special assessment for filling and grading Jackson street, assessed by the city of Chicago against sub-lot 4, (the alley,) and on March 26, 1868, Henry Horner, the owner of lot 3, and complainant's husband, paid to said Moore $5.10 "in full for his (said Horner's) portion of said special assessment." Keene has paid the taxes upon the east half of the alley abutting upon lot 1, and the 6 by 10 strip. This evidence does not show that Henry Horner claimed to hold the whole of the alley adversely, but rather shows that he considered the owners of the other lots abutting on the alley had a joint right of way with himself, and should pay their proportion of the taxes on that portion of the alley opposite the respective lots by reason of the grant in their deeds.

*Third*—Plaintiffs in error insist the circuit court erred in dismissing the original bill for want of equity. It was alleged in the original bill that defendants had deposited large quantities of rotten wood, *debris* and rubbish in front of Abson's door. The evidence shows it had all been removed before the bill was filed,—that it was only placed in the alley temporarily, while repairs were being made to the 6 by 10 strip. The real question at issue in the original bill and answer was the right of the parties to the use of the alley with teams. No injury, irreparable or otherwise, was shown by the evidence to have occurred, and no use of the alley other than was authorized by the grant in the deed was shown; consequently the relief sought to prevent defendants from using the alley with teams was not warranted and the bill was properly dismissed for want of equity.

Finding no serious error in the record the decree of the circuit court is affirmed.          *Decree affirmed.*