## John F. Heuer, Plaintiff in Error, v. William M. Webster, Defendant in Error.

### Gen. No. 19,474.

1. EASEMENTS, § 47*—*when extrinsic evidence inadmissible to determine character of use.* Where a deed expressly grants the use of a strip of land as a common right of way, without any words of limitation or restriction in the deed as to the character of its use, resort can not be had to extrinsic evidence to determine the character of its use, where the language is unambiguous.

2. EASEMENTS, § 49*—*when grant of right of way includes vehicle passage.* A deed granting the use of a strip of land between lots for a common right of way, *held* to grant the right to vehicle passage where the strip is sufficiently wide for the passage of ordinary vehicles and there are no words of limitation or restriction in the deed as to the character of its use.

3. EASEMENTS, § 53*—*right of co-owner to pave right of way.* Where a deed grants, for the common use of the parties, a strip of land between lots sufficiently wide for vehicle passage, either party may at his own expense pave the same, if in so doing there is no unreasonable interference with such co-owner's equal rights.

Error to the Municipal Court of Chicago; the Hon. JOHN J. ROONEY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1913. Reversed and remanded. Opinion filed June 9, 1914.

MAYER, MEYER, AUSTRIAN & PLATT, for plaintiff in error.

DUDLEY TAYLOR, for defendant in error.

MR. JUSTICE BARNES delivered the opinion of the court.

By this writ of error it is sought to reverse a judgment for costs rendered on a directed verdict in favor of defendant in error, Webster, the defendant below. Heuer, the plaintiff, brought suit to recover damages resulting from Webster's tearing up a cement drive-

*See Illinois Notes Digest, Vols XI to XV, and Cumulative Quarterly, same topic and section number.

way laid by Heuer, at his own expense, on a strip of ground ten feet wide, one-half thereof being on Webster's lot and the other half on Heuer's, over which they had, by a deed hereinafter referred to, a common right of way.

An apartment building stands on each lot and each is flush with the strip, Webster's with the north and Heuer's with the south boundary thereof. The lots are on the west side of Sheridan road and the building line is fifty-five feet therefrom. Between them and said road is a parkway under the jurisdiction of the Lincoln Park Board. Back of the lots is an alley connecting with streets north and south of said lots, running west from Sheridan road. The cement pavement was laid over the entire width of the strip from the alley to the sidewalk in front of the lots, and, at the time of the trial, it had been extended across the parkway to Sheridan road. A tree in the parkway in the line of the strip extending to the road, necessitated a curve in the driveway, which was made on the parkway in front of plaintiff's lots. The locality is that of a residential district to which the improvements and adornments of a parkway and a boulevard lend attraction. Before the pavement was laid, the strip in question was part of a grass plot extending south of defendant's building over the adjoining vacant lot. No walk or driveway had been constructed thereon until the cement driveway in question was laid in May, 1910, and, in fact, there was no user of the strip of any kind prior to the erection of plaintiff's building. When the pavement was partially constructed, Webster tore up a portion thereof on his side of the strip. Heuer relaid it, afterwards finishing it to Sheridan road. Defendant deems a consideration of most of these facts necessary to a proper construction of the deed granting the easement to the strip in question.

The covenant and agreement as to said strip, in the language of the deed, is that it

"shall be and remain an open court for light, air,

access and right of way, for the common benefit of the parties hereto, their heirs and assigns, and of the owners of any building or buildings now or which may hereafter be erected on said lots nine (9) and ten (10) or either of them, said strip of ground lying and being one-half thereof on each side of the north line of said south ten (10) feet of said lot nine (9)."

Plaintiff contends that the right of way so given is for passage for vehicles as well as pedestrains, and defendant contends that the deed must be construed in the light of the facts existing at the time of its execution from which, he contends, a contrary purpose and intention must be inferred.

The first matter for determination, therefore, is the construction to be given to the terms of the covenant, as aforesaid, and whether resort to such extraneous facts is necessary to that end. Several cases, involving the construction of instruments conveying easement rights, are called to our attention, in which the court in construing the particular grant before it referred to the situation of the parties and the nature and condition of the subject-matter of the grant at the time of the execution of the instrument. It would render this opinion unduly long to make a critical analysis of said cases in order to distinguish them from the one at bar. Some involve an easement of one nature and some of another; some dominant and servient tenements, some "ways of necessity," and others, as here, where the parties had equal and common rights in the reserved way. In several, the language of the grant was so ambiguous as to require resort to extrinsic evidence to illumine the intent of the parties and reach a proper construction. But where the language is plain and free from ambiguity and its meaning readily ascertained from the context of the instrument itself, there is no more necessity for resort to extrinsic evidence to gather its construction than there is in any other kind of written instrument. In *Horner v. Keene,* 177 Ill. 390, it was said, referring to Sheppard's Touchstone, 88, that: "Where an easement is granted or re-

served in express terms by deed, the question then ordinarily is, what is the proper construction of the language of the deed?" Here the language makes an express grant in terms that are clear and unambiguous. A "right of way" is designated without limitation or reservation as to its character. Like the grant referred to in the *Horner* case, *supra*, it does not "limit the right of way to foot passage," to which defendant urges it was intended to be restricted. A similar contention was made in the case of *Shreve v. Mathis*, 63 N. J. Eq. 170. The Court said:

"The agreement for the way contains no specifications of any particular manner in which the alley should be used. It imposes no limitation on the extent of the use. It is declared that it shall be a free and unobstructed right of way over a private alley. Any use consistent with the use of a way is within the agreement. A footway, a wagonway, a passage for horses or other animals are all permissible uses of a way."

In *Randall v. Grant*, 210 Mass. 302, where the deed reserved "a right of way through the premises to land in the rear," the Court said what is applicable here:

"This is not the case of a right of way by prescription, where the extent of the right is measured by the ordinary use which established it. The rights of these defendants must be determined by the terms of the reservation and grant in the deeds. The language used in conveying the right of way is of the most general character, without limitation or restriction." See also *Arnold v. Fee*, 148 N. Y. 214; *Gillespie v. Weinberg*, 148 N. Y. 238; *Central Christian Church v. Lennon*, 59 Wash. 425.

When a grant cannot be construed by the language of the deed, resort may unquestionably be had to extrinsic evidence to determine it (*Rowell v. Doggett*, 143 Mass. 483), and there are many cases where such evidence is resorted to because of the uncertainty of the nature or extent of the easement granted, but when the words of a deed are not ambiguous and are explainable by the context, resort to extrinsic evidence

to ascertain the intent and purposes of the parties thereto is unnecessary. Inasmuch as the strip in question is sufficiently wide for the use of ordinary vehicles and teams and there are no words of limitation or restriction in the deed as to the character of its use as a right of way, we see no difficulty, without resort to the extraneous facts referred to, in construing it to include the right to vehicle as well as foot passage.

Nor does the word "court" exclude the idea of the use of vehicles. On the contrary, that term is frequently applied to open areas formed by construction of buildings and connected with their use, in which vehicles are commonly used.

But were resort had to the extraneous matters above stated, we find nothing in them that warrants the construction contended for by defendant in error. There was no "user" of the strip in question at or prior to the time of the execution of the deed and, as by its express language the future erection of a building on plaintiff's vacant lot and the consequent common use of the strip under entirely different conditions were contemplated, it is reasonable to suppose that the parties had in view the ordinary and reasonable uses to which a common passageway of such width between buildings might be put. The fact that there was an alley in the rear of the lots or a parkway in front (which plaintiff presumably had the right to cross) has, in our opinion, no legitimate tendency to disclose intent as to the future use of the way.

But it is urged that plaintiff had no right to lay said cement driveway without defendant's consent. The record presents no evidence that in so doing the grade was changed or the surface altered in any such way as to produce special inconvenience to defendant. Nothing is complained of, except what is naturally incident to its rightful use, such as noise from passing vehicles and a less artistic appearance. It cannot be seriously questioned that such an easement carries with it the right to enter upon any part of the way

and improve it in a manner to render it available for its contemplated use, if in so doing there is no unreasonable interference with the co-owner's equal rights, of which there is no proof in this record. In *Rotch v. Livingston*, 91 Me. 461, where, as here, each co-owner was, as there stated, "at once a land-owner, and an easement owner," the Court said:

"Each owner can (at least at his own expense as is proposed in this case) use the entire width of the way and can fit it all for use at his reasonable discretion so long as he does not unreasonably impede any other co-owner in his use."

In its opinion the Court cites several cases, recognizing the same principle. Other cases that might be cited are *Atkins v. Bordman*, 2 Metc. (43 Mass.) 457, 467; *Kaatz v. Curtis*, 215 Mass. 311; *Newcomer v. Coulsen*, L. R. 5 Ch. Div. 133; and *Hotchkiss v. Young*, 42 Ore. 446.

No special complaint is made of the character of the pavement, which is that customarily used, and no objection can reasonably be made to the right to have this way paved. In *Appleton v. Fullerton*, 1 Gray (67 Mass.) 186, where the reservation of the right of way was in general terms, the Court said:

"If it had before been a mere surface of earth, it might be improved by macadamizing, paving or planking, being limited to the use of the same right, in a manner more convenient and beneficial for those having the common right."

In *Newcomer v. Coulsen, supra*, it was said "that the right of way is one including the right of improving, from time to time, according to the improvements of the age."

The distinctions sought to be made by defendant as to the facts in the above cited cases do not, in our opinion, affect the principles herein enunciated, or their

application to the case at bar. They seem to be well settled, and we think the court erred in directing a verdict for defendant. The judgment will be reversed and the cause remanded for a new trial.

*Reversed and remanded.*