### Card and others *against* Grinman and others.

Previous to the revision of the statutes in 1821, wills were revocable by parol. Where it was alleged, in the reasons of appeal from a decree of probate approving a will, that the devisees named therein, after the testator had revoked it, and directed it to be destroyed, fraudulently took it out of his possession, and preserved it, while they induced him to believe it had been destroyed; it was held, that parol evidence was admissible to prove these facts.

This was an appeal from a decree of the court of probate for the district of *Windham*, passed on the 23d day of *June*, 1821, approving the last will of *John Grinman*, deceased.

The cause was tried at *Brooklyn, September* term, 1822, before *Bristol*, J.

Among the reasons assigned by the appellants, the principal one was, that the will in question had been revoked, by the testator. The facts stated in relation to this point, were, that the

testator declared it not to be his will, and ordered it to be destroyed; and that the devisees named therein took it out of his possession, and induced him to believe, that they had destroyed it, but fraudulently preserved it, for the purpose of establishing it after his death, contrary to his mind and will. To prove these facts, the appellants offered parol evidence; to the admission of which the appellees objected; and the judge rejected it. The decree of probate being affirmed, the appellants moved for a new trial, on the ground that such evidence was improperly rejected.

*Goddard* and *Fitch*, in support of the motion, contended, 1. That a parol revocation of a will, previous to the late revision of our statutes, was effectual. By the common law of *England*, wills were revocable by words only. *Pow. Dev.* 532, 3. 6 *Cruise's Dig.* 79. *s.* 2. In the reign of *Charles* II. the legislature thought proper to alter the common law, in this respect; and the stat. 29 *Car.* 2. *c.* 3. *s.* 6. rendered certain *acts* of the testator therein specified, or a declaration *in writing*, necessary. Our legislature, at an early period of our judicial history, adopted from the same statute the principal provisions of the 5th section regarding the making of wills, but omitted the provisions of the 6th section regarding the revocation of them. *Stat.* 42. 683. ed. 1808. At the revision in 1821, our legislature adopted the latter provisions. *Stat.* 200. *tit.* 32. *c.* 1. *s.* 6. The common law of *England*, on this subject, has been our common law, except when, and as far as, it has been altered, by our legislature. 1 *Swift's Syst.* 422. In *Witter* & ux. v. *Mott* & al. 2 *Conn. Rep.* 67. a declaration of the testator, unaccompanied by the formalities required by the stat. 26 *Car.* 2. *c.* 3 *s.* 5., was held to be effectual to revoke the will. It is true, that in that case, the declaration was in writing; but not being within the statute of frauds and perjuries, it could stand on no higher ground than a parol declaration. The maxim *dissolvitur eo ligamine quo ligatur*, was held not to be applicable to a devise. The acts referred to, shew decisively in what light this subject has been viewed, by our legislature.

2. That the evidence offered was proper to shew the fraudulent preservation of the will, after the testator had ordered it to be destroyed. [On this point the counsel were stopped by the Court.]

*Cleaveland* and *D. Young*, contra, contended, That our ancestors never adopted the antient common law of *England* in relation to wills. The settlement of this country was not commenced until after the statutes 32 and 34 *Hen.* 8. Our ancestors took from the *English* law, as it existed then, such principles and provisions as they deemed suitable to our condition. By the antient common law, a parol devise was as effectual as a parol revocation. Our ancestors required both to be in writing. The earliest records of the colony shew, that written wills were in constant use; (*a*) and there is not a suggestion in all our juridical history, that there could be a valid will without writing. But although the legislature prescribed, at a very early period, the age of a competent testator, and subsequently, the formalities of execution; yet no satutory provision requiring wills to be in writing, was ever introduced into our statute book, until the revision in 1821, when the provisions of 29 *Car.* 2. *c.* 3 *s.* 6. regarding revocations, were adopted. We have had no statute prescribing any formality in the republication of a will; yet our courts have uniformly decided, that a parol republication is not good. 4 *Day* 75. In *Belden* v. *Carter,* 4 *Day* 66. it was made a point, by able and learned counsel, whether a revocation in writing, subscribed by the testator, and attested by *two* witnesses, was effectual against a will attested by *three* witnesses. The ground taken by the opposing counsel, was, that a parol revocation was sufficient. The court avoided the expression of an opinion on this question, although it might have been decisive of the case. In *Witter* v. *Mott,* 2 *Conn. Rep.* 67. the testator had written on the back of his will, "This will is invalid;" and the question was, whether this was a revocation. The doctrine of parol revocations was urged in that case also. The court, without recognizing the doctrine, decided that the declaration so made, was a revocation, observing, it was sufficient that it was *in writing.* To hold that a parol revocation is good, would be in contravention of the generally received opinion of lawyers and judges, and of the practice of the people, from the first settlement of the country.

2. That no point was made at the trial, distinct from that of revocation; and, of course, no other point comes before this court for revision. In the reasons of appeal, there is no alle-

(*a*) The wills, which appear on the early records of *Connecticut*, are signed by the testator, without the appendage of a seal, and are generally, but not always, attested by one or two witnesses; seldom, if ever, by three. *R.*

gation of fraud, on which proof could be received. The facts are not so alleged, that they could be traversed, by the appellees, or proved by the appellants.

HOSMER, Ch. J. *John Grinman* made his last will and testament, which was proved, and approved, by the probate court. From the decree of probate, the heirs at law appealed, and among other things, assigned as the reasons of their appeal, that the said *Grinman* revoked the will in question, having declared that it was not his will, and directed it to be destroyed; that it was, against the mind of *Grinman,* fraudulently procured, by the influence of the devisees; and taken out of his possession by them, and preserved, with a view to its future establishment; and he induced to believe, that the destruction of it, had been effected. These facts being traversed, on the trial of the cause, the appellants offered parol testimony to prove them; and the court held such evidence to be inadmissible.

The allegation of the appellants, relative to the fraudulent procurement of the will, is so defective, that I shall pass it by without observation. With respect to the other averments, they undoubtedly were proveable by parol testimony.

In the first place, the testator, by parol, revoked his will; and a parol revocation, as the law then existed, was effectual. Devises of lands by virtue of the statute of wills, might have been revoked, by words only, without writing; " the statute of wills giving power to any person seised in fee of lands to devise them in writing, but being silent as to revocations." 6 *Cruise's Dig.* 79. *tit.* 38. *c.* 6. *s.* 2. *Pow. Dev.* 533. This was, precisely and literally, the condition of our law, when the words of revocation were pronounced; and the legal consequences must be the same. In *Witter* & ux. v. *Mott,* 2 *Conn. Rep.* 67. it was adjudged, by this Court, that the will of *Samuel Mott,* was revoked, by an unwitnessed and unsealed writing, on the back of it, signed by the testator, and declaring it to be invalid. This determination shows decisively, that the maxim *dissolvitur eo ligamine quo ligatur,* was not applicable to a devise; and unquestionably for the reason before assigned, because the statute was silent on this subject. In assigning the reasons, Ch. J. *Swift* observed, " it is not necessary that the revocation of a will, should be attested by three witnesses; it is sufficient to be in writing :" but the latter expression must have been his individual opinion, and could not have been the opinion of the Court. Between a writing unwitnessed and unsealed, and a

declaration proved by parol, there is no essential difference, neither of them being specialties, but both evidences precisely of the same grade. A statute may make, and it is well known has made, a diversity, between parol testimony and written ; but, at common law, there is no such discrimination between them. The decisions of the *English* courts under the statute of wills, giving validity to parol revocations of devises, in writing, were remedied by the sixth section of the statute of frauds ; and, by a recent statute in our own state, (*Stat.* 200. *tit.* 32. *c.* 1. *s.* 6.) in order to redress the same inconvenience, a similar remedy has been resorted to. Undoubtedly, by an assumption of legislative power, this Court can promulge as law, any provision, which will meet a particular mischief; but with a very eminent judge, I take pleasure in declaring, "It is my wish and my comfort to stand *super antiquas vias* : I cannot legislate ; but by my industry, I can discover what our predecessors have done, and I will servilely tread in their footsteps." *Bauerman* & al. v. *Radenius,* 7 *Term Rep.* 664. The *English* common law, so far as it was not unadapted to the local circumstances of this country, our ancestors, on their emigration hither, brought with them ; and until it is abrogated, by statute, I must, with the exception mentioned, consider it as the common law of this state. I deprecate a departure from the old highway of the common law, by the indulgence of a disposition to decide on principles of equity and convenience, which often are notional and imaginary.

The delivery of the will, by *Grinman,* to the devisees, directing it to be destroyed, and which, as he was made to believe, was actually destroyed, but in fact was fraudulently preserved by them, undoubtedly was proveable by parol testimony. It could be proved in no other manner ; and I can imagine no objection, of any possible force, to the admission of the evidence offered. Every act of a testator, by which he shows his intention to cancel a will, though the will be not actually cancelled, operates as a revocation. 6 *Cruise's Dig.* 94. § 28.

In *Bibb* v. *Thomas,* 2 *Black. Rep.* 1043. a testator gave his will a rip, with his hand, and so tore it, as nearly to tear out a bit, then rumpled it together, and threw it on the fire, but it fell off. It was taken up, by one *Mary Wilson,* put in her pocket, and preserved. This was deemed a revocation of the will.— The act clearly indicating the *animus revocandi,* was considered as having the same operation, as if the devise had literally undergone a destruction. *Pow. Dev.* 633.

The case before us, essentially, is not distinguishable from the one to which I have referred. Superadded to this, is, the fraud of the devisees, which invalidated their acts; and it would be in contravention of the known and established principles on this subject, to give validity to a transaction, which, most unquestionably, is void.

I conclude, then, that the will of the testator was revoked, and only has a visible existence, through the fraud of the devisees; and that parol testimony was legally sufficient, for the establishment of these facts.

CHAPMAN and BRAINARD, Js. were of the same opinion.

PETERS and BRISTOL, Js. thought, that our law had always required something more than a parol declaration, to revoke a written will; but they concurred in the opinion, that there must be a new trial, on account of the rejection of the evidence adduced to prove the fraudulent conduct of the devisees in relation to the will.

New trial to be granted.