THE STATE OF NEW JERSEY, PLAINTIFF IN ERROR, v. SOPHIA MEYER, DEFENDANT IN ERROR.

Argued March 20, 1900—Decided November 19, 1900.

The defendant having been convicted of a high misdemeanor in the Union County Quarter Sessions, removed the conviction by writ of error to the Supreme Court, and there the judgment was reversed, for the admission at the trial of testimony deemed illegal. *Held*, that the attorney-general or a prosecutor of the pleas could sue out a writ of error from this court to reverse the judgment of the Supreme Court.

On motion to quash writ of error.

For the state, *Nicholas C. J. English,* prosecutor of the pleas.

For the defendant in error, *Jeremiah A. Kiernan.*

The opinion of the court was delivered by

DIXON, J. The defendant was convicted before the Union County Quarter Sessions of a high misdemeanor, and on error her conviction was reversed by the Supreme Court for the admission at the trial of testimony deemed illegal. Thereupon the state sued out a writ of error from this court to reverse the judgment of the Supreme Court, and now the defendant moves to dismiss the writ on the ground that the state is not entitled to a writ of error in a criminal case.

On this contention the primary question is, how stood the matter at the common law?

The right of the crown to issue a writ of error in a criminal case is assumed by the older jurists of England. Thus Lord Coke says, that if a judgment of acquittal be given upon an erroneous indictment, the king need not bring a writ of error in order to subject the defendant to a new indictment. *Coke P. C.* 214. This is repeated by Matthew Bacon as good law in his time. *Bac. Abr., error A.* So, Lord Hale (2 *Hale P. C.*

247, 248) clearly indicates that, if judgment be given for the defendant on a special verdict found in a case of murder or felony, it may be reversed on error; and (*Id.* 394, 395) that the like course may be taken, even when the defendant has been acquitted by a general verdict on a plea of not guilty.

No intimation to the contrary appears in any of the ancient books.

This fact is perhaps stronger evidence of the right of the crown than would be a direct assertion of the right, for it shows that, when the minds of the writers adverted to the subject, no doubt was suggested.

It was also a settled rule of the common law that the defendant could not sue out a writ of error in a criminal case without special warrant from the crown or the *fiat* of the attorney-general, and, at least in cases of treason and felony, this *fiat* was given *ex gratia regis,* and not *ex debito justitiæ.* *Rex* v. *Wilkes,* 4 *Burr.* 2550. From this it is a reasonable inference that the attorney-general might himself prosecute such a writ.

The old case of the Marquis of Winchester points in the same direction. For, while the reporters are not agreed as to whether the writ in that case issued at the instance of the crown or of the defendant (*Jones* 407; *Cro. Car.* 504), they concur in the statement that the judgment was reversed for a defect prejudicial to the king. Sir William Jones, who reports the case as a writ of error brought by the king, had sat upon both the common bench and the king's bench in England, and his omission to comment upon the proceeding as anomalous is a plain indication of its legal propriety.

Coming to more recent times, we find that in *Regina* v. *Houston,* 2 *Craw. & D.* 10, 191, the defendant had judgment on his demurrer to an indictment for conspiracy, but on writ of error brought by the crown the judgment was reversed by the Court of Queen's Bench in Ireland. So, in *Queen v. Millis,* 10 *Cl. & F.* 534, on an indictment for bigamy a special verdict was rendered, which, being removed by *certiorari* into the Queen's Bench in Ireland, resulted there in a judgment of acquittal; this judgment was taken into the

House of Lords by writ of error, at the instance of the queen. Likewise, in *Regina* v. *Chadwick,* 11 *Q. B.* 205, there was a special verdict on an indictment for bigamy, on which the defendant had judgment in the Liverpool Assizes, and this was removed into the Queen's Bench by writ of error at the instance of the crown.

In none of these cases was a doubt intimated as to the right of the crown.

In view of these matters, it seems almost incredible that by the English common law the crown was not entitled to a writ of error in criminal cases.

In this country, as early as 1821, the Maryland Court of Appeals, in *State* v. *Buchanan,* 5 *Harr. & J.* 317, considered the authority of Lord Hale alone as sufficient to establish the rule of the common law, and on that basis sustained the right of the state to prosecute the writ.

The leading case to the contrary is *People* v. *Corning,* 2 *N. Y.* 9, for the earlier cases of *People* v. *Dill,* 1 *Scam.* 257, and *Commonwealth* v. *Harrison,* 2 *Va. Cas.* 202, cite no authorities and give no reasons for the judgment, and in *State* v. *Reynolds,* 2 *Hayw.* (*Tenn.*) 110, the question is confounded with the very different one of granting a new trial after acquittal.

With regard to the case of People *v.* Corning, I think that anyone reading the opinion of Judge Bronson will perceive that his conclusion was induced more by the supposed danger arising from the exercise of such a power by the state than by the legal authorities for and against the possession of the power. That his apprehensions were not shared in by people generally was soon shown by the statute passed to confer on the state the power denied by the court. Moreover, the decision rendered in that case was rendered in the teeth of the previous practice in New York, and of a former decision by the same court, given after full discussion and consideration, in *People* v. *De Bow,* 2 *N. Y.* 9, *note a.*

The case of *Commonwealth* v. *Cummings,* 3 *Cush.* 212, was decided mainly on the construction of the Massachusetts statutes, and that of *United States* v. *More,* 3 *Cranch* 159,

174, turned wholly on the jurisdiction of the federal Supreme Court.

These decisions are not satisfactory as to the common law of England, and should not be followed in this state, where we are accustomed to adhere closely to common law rules which were not obsolete before the Revolution, and are not out of harmony with our institutions.

This issuance of a writ of error should not be confounded with the granting of a new trial, which always rests in the discretion of the court. The rule of the English judges was to refuse a new trial after the acquittal of the accused upon an indictment, and the principle underlying that rule is now imbedded in our constitution. But the acquittal there intended does not include the reversal of a conviction for error of law. *Smith* v. *State,* 12 *Vroom* 598.

But not only does the common law sanction this writ of error; our statutes likewise authorize it.

From the time of Lord Cornbury's ordinance, promulgated in 1704, the Supreme Court has had cognizance of all pleas, civil, criminal and mixed, as fully as the Courts of Queen's Bench, Common Pleas and Exchequer in England; and in 1799 the legislature enacted "that errors happening in the Supreme Court of this state shall be heard, rectified and determined by the Court of Appeals in the last resort in all causes of law," and "that it shall and may be lawful for the attorney-general, in behalf of the state, or for any party, his legal representatives, or other person, who may be damnified or aggrieved by any judgment rendered or to be rendered in the Supreme Court, to sue forth a writ of error, to be directed to the judges of the said Supreme Court for the time being, commanding them to cause the record of such judgment, and all things concerning the same, to be brought before the said Court of Appeals." *Pat. L., p.* 345.

Effect cannot be given to this language without including criminal cases, and making the right of the attorney-general, on behalf of the state, as clear as that of the defendant. The right thus committed to the attorney-general has since been

delegated also to the prosecutors of the pleas, in case of the absence of the attorney-general. *Gen. Stat., p.* 118. These provisions of the act of 1799 still exist (*Gen. Stat., p.* 1391), and this court has already held that they embraced criminal causes. *Hines* v. *State,* 25 *Vroom* 199.

The question whether, after such an acquittal as will protect the defendant from being tried again, the state may prosecute a writ of error in order to correct a misconstruction of law need not now be and has not been considered by the court.

The motion to dismiss the present writ of error is denied.

*For the motion*—None.

*Against*—The Chancellor, Chief Justice, Van Syckel, Dixon, Garrison, Collins, Fort, Hendrickson, Adams, Vredenburgh, Voorhees. 11.