## JAMES GRAHAM *vs.* GEORGE WALKER ET UX.

Second Judicial District, Norwich, April Term, 1905.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

Owing to essential differences between the legal and political institutions of the two countries, the law of this State, unlike the common law of England, does not sanction the establishment of personal rights of way or other easements by immemorial local custom.

A personal right of way, not appurtenant to land, ceases with the life of the one in whom it is vested.

An estate of such nature cannot be granted to the inhabitants of a particular locality.

It is possible for a way by prescription to be appurtenant to a particular close, although the servient and dominant tenements are half a mile apart and the way is accessible only by means of the highway upon which the respective closes abut ; but the circumstances attending the prescriptive use must be such as to make it reasonable to presume that the owner of the servient tenement knew that the way was used in connection with and furtherance of the enjoyment of the dominant estate, and not under a claim of personal right or privilege.

When such a right of way is established, it is immaterial that other persons may have a similar way appurtenant to their closes.

Argued April 25th—decided June 20th, 1905

ACTION in the nature of trespass *qu. cl. fr.*, brought by appeal from a judgment of a justice of the peace to the Court of Common Pleas in New London County and tried the jury before *Noyes, J.;* verdict and judgment for the

plaintiff for one cent damages, and appeal by the defendants. *Error and new trial ordered.*

*William H. Shields* and *Amos A. Browning*, for the appellants (defendants).

*Charles W. Comstock* and *Edwin W. Higgins*, for the appellee (plaintiff).

BALDWIN, J. The answer contained three separate defenses: a general denial; an entry in the exercise of a prescriptive right of way to and from Taftville appurtenant to a close of the defendants situated in a quarter of the town of Lisbon known as Blissville; and an entry in the exercise of a right of way to and from Taftville, belonging by immemorial local custom to all the inhabitants of Blissville.

It was admitted that the land over which the way was alleged to exist was bounded by a highway, on the opposite side of which, at a distance of about half a mile, the defendants owned a house and farm, which was the close to which they claimed the way to be appurtenant.

The defendants introduced evidence which, as they claimed, proved the existence of each of the rights of way set up in their answer: the former by a continuous, uninterrupted and adverse user for more than fifteen years by them and their predecessors in title in connection with the occupation, use and enjoyment of their close; and the latter by a like user for more than fifteen years by all the landowners and inhabitants of Blissville generally and their tenants and employees.

With respect to the third defense, the jury were instructed that if a substantial portion of the inhabitants of Blissville for an entire period of at least fifteen years had uninterruptedly, continuously, adversely, and under a claim of right in behalf of all the inhabitants, passed over the land in question, to and from Taftville, with the knowledge of the owner of the land, a right of way in favor of all the in-

habitants was thereby acquired, founded on custom, which attached to every one who for the time being was such an inhabitant, while he continued to be such; that if such a user was open, notorious and visible, the owner of the land was charged with notice of it; that a user would be continuous and uninterrupted, if it were substantially such, although it were more or less frequent according to the nature of the way and the occurrence of occasions for traveling over it; and that certain testimony which had been introduced by the plaintiff as to the existence of other paths and their use by the inhabitants in going to and from Taftville, tended in a measure to show that their use of the way claimed was not continuous, uninterrupted and customary.   These instructions are made a ground of appeal by the defendants.

They were too favorable to the defense.   A right of way by custom in favor of the inhabitants of a particular locality might be set up by the common law of England.   It could be proved by immemorial usage.   From such proof a presumption was deemed to arise that the usage was founded on a legal right.   This right was not assumed to arise from a grant by an owner of land of an easement in it.   No grant of that nature can subject the tenement of the grantor to an easement which will outlast the life of the grantee, unless it be made in such a way as to become appurtenant to some other tenement.   A right of way by custom appertains to a certain district of territory, but not to any particular tenement forming part of that territory.   Nor is it confined to owners of land within that territory.   It belongs to the inhabitants of that territory, whether landowners or not. To a fluctuating body of that kind no estate in lands can be granted.   If therefore an easement be claimed to exist in their favor, a title cannot be made out by prescription, on the theory of a lost grant.   It must have come, if at all, from some public act of a governmental nature.

The theory of English law was that, if there had been a usage from time immemorial (that is, so far as could be ascertained, from the coronation of Richard I.), affecting the use of real estate by those not able to show any paper title

to warrant it, it might fairly be presumed that it arose under an Act of Parliament or other public act of governing power, the best evidence of which had perished. A charter from some feudal lord or ecclesiastical corporation might be such an act. Of such charters there were no public records. That the accidental destruction of the parchment on which one was written should annul the privileges which it gave would be plainly unjust.

The political and legal institutions of Connecticut have, from the first, differed in essential particulars from those of England. Feudalism never existed here. There were no manors or manorial rights. A recording system was early set up and has been consistently maintained, calculated to put on paper, for perpetual preservation and public knowledge, the sources of all titles to or incumbrances affecting real estate. Nor have we all the political subdivisions of lands which are found in England. An easement by custom may exist there in favor of the inhabitants of a city, county, town, hamlet, burgh, vill, manor, honour, or hundred. 1 Coke Lit., 110b, 113b, 115b. Most of these terms denote forms of communities that are unknown in this State. Under our statute of limitations, also, rights of way may be established by a shorter user than that required by the English law. *Coe* v. *Walcottville Mfg. Co.*, 35 Conn. 175; General Statutes, § 1073.

During the greater part of the colonial era, the common law of England was not deemed to form a part of the jurisprudence of Connecticut, except so far as any part of it might have been accepted and introduced by her own authority. Stat., Ed. 1769, 1; 1 Swift's System, 44. Later the doctrine received the sanction of this court that it was brought here by the first settlers, and became the common law of Connecticut so far as it was not unadapted to the local circumstances of this country. *Card* v. *Grinman*, 5 Conn. 164, 168. This court has never affirmed the recognition by our law of personal rights of way or other easements resting on local custom. In view of all the considerations named, we are of opinion that such rules of the

English common law as gave them sanction were unadapted to the conditions of political society existing here, and have never been in force in Connecticut. It follows that the trial court erred in directing the jury to disregard the second defense.

They were told in the first place to disregard it, because the evidence of user introduced in its support was equally relevant to support the third defense, and if the defendants as inhabitants of Blissville had a personal right of way by local custom, their user, being consistent with that, could not be claimed to indicate the assertion and enjoyment of a way by prescription appurtenant to their particular close. See *Blewett* v. *Treyonning*, 3 Ad. & El. 554. There being no such thing in Connecticut as a personal right of way established by custom, the evidence in question could only be pertinent to the second defense, and if sufficient to support that, the defendants would have been entitled to a verdict.

The defendants had themselves used the way in question only since they purchased their close, seven years before. To make out a prescriptive right, it was therefore necessary to tack the user by their predecessors in title.

The trial court further instructed the jury, particularly with regard to the second defense, that there had been no evidence that the use of the way by the defendants or their predecessors in title had any connection with the defendants' land, nor any direct relation to its use and enjoyment, since it differed in no respect from the use of the way by their neighbors, and therefore that no way appurtenant to their close had been made out.

In this there was error. An easement may be appurtenant to land although the servient tenement is separated by other lands from the dominant tenement. A right to the enjoyment of a pew in the parish church could at common law be claimed by prescription as appurtenant to a messuage in any part of the parish. *Stocks* v. *Booth*, 1 Term, 428. A right to convey water from a distant source of supply may be appurtenant to a tenement separated from that on which such source of supply is situated by several intervening

parcels of land, each belonging to a different proprietor. *Cady* v. *Springfield Water Works Co.*, 134 N. Y. 118, 31 Northeastern Rep. 245. In like manner, a way from one close to and through another is none the less appurtenant to the former if it run over the intervening lands of numerous proprietors. *Guthrie* v. *Canadian Pacific R. W. Co.*, 27 Ont. App. 64, 69 ; *Horner* v. *Keene*, 177 Ill. 390, 52 Northeastern Rep. 492. See *Fisk* v. *Ley*, 76 Conn. 295. No reason is apparent why the same principles should not govern when a way is prescribed for as an appurtenance, which commences at a highway. In an early English case the plaintiff declared on a way to his close in *D* " in, by, and through a certain way in Sale " ; and in overruling a motion in arrest of judgment the court held that,—assuming the term " way," as thus used, to mean highway,—while the plaintiff was in the exercise of a public right when on the highway, he might prescribe for a way over adjoining ground reached from and by means of the highway. *Banning's Case*, Noy, 9. This is cited by Comyn as authority for the position that a private way may exist to the close of another, through or across the highway. 3 Com. Dig., 57, Chimin, D. So it has been held that a way may be appurtenant to a close, though separated from it by a navigable river. *Case of Private Road*, 1 Ashmead (Pa.) 417, 421.

That a way cannot be appurtenant to a close at which it neither begins nor ends has been often asserted by text writers, and is not without countenance from judicial decision. Wash. on Easements (3d Ed.) * 161 ; 23 Amer. & Eng. Ency. of Law (2d Ed.), 6, Private Ways ; *Whaley* v. *Stevens*, 21 S. Car. 221 ; 27 id. 549, 558, 559. The better reason seems to us to lead to a contrary conclusion and to be supported by the rules of common law. An appurtenant way ordinarily does touch the close to and from which it leads, and that it should is commonly essential to its enjoyment; but it is not always thus essential, and when not, the dominant may be separated even at a long distance from the servient tenement.

The use, however, of any easement, which can be claimed

Graham *v.* Walker.

as an appurtenance by prescription, must be so related to the use of the dominant tenement that its particular connection with the beneficial enjoyment of that tenement is not merely conjectural, but direct and apparent. A claim to a way by prescription, appurtenant to a particular close, being founded on the presumption of a lost grant, none can be so gained unless the prescriptive use was such as to make it reasonable to presume that the owner of the land over which the way was used knew that such use was in connection with and furtherance of the enjoyment of such close. He might be willing to concede a claim to a personal right of way which would cease with the life of the claimant, when he would dispute a claim to a right of way appurtenant to another's close, which would endure for ever.

The fact that the respective closes of the parties were half a mile apart, and that the way was only accessible by the highway on which each of these closes abutted, did not conclusively bar a claim that the way was an appurtenance to that of the defendants. The testimony which they had introduced tended to show a long, adverse, and continuous user by the successive owners of their close, in connection with their use, occupation and enjoyment of it, in going thence to Taftville and back. Such a user, if proved to the satisfaction of the jury, might sufficiently establish a direct connection between the use of the close and the use of the way to bring it within the definition of a way appurtenant. That some or all of their neighbors might have a similar way, appurtenant to their closes, was immaterial. *Kent* v. *Waite*, 10 Pick. (Mass.) 138.

Other reasons of appeal require no discussion, as the questions presented are not likely to recur on another trial.

There is error, and a new trial is ordered.

In this opinion the other judges concurred.