STATE OF CONNECTICUT vs. ROCCO MUOLO.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued April 5th—decided May 1st, 1934.

*Philip R. Pastore,* Assistant City Attorney, for the plaintiff in error.

*Joseph Koletsky* and *Kenneth Wynne, amici curiæ.*

*Franklin Coeller,* for the defendant in error.

MALTBIE, C. J.  The Assistant City Attorney of the City Court of New Haven informed against the defendant in error, charging him with the violation of an order of the board of police commissioners of the city acting as a traffic commission under § 56b of the General Statutes, Cum. Sup. 1933.  The defendant demurred to the information as insufficient in law, and the court sustained the demurrer upon the ground that the statute under which the order was issued was unconstitutional.  Thereafter it caused judgment to be issued acquitting the defendant, but not discharging him, so that he remained under bail, pending the disposition of the present proceeding.  This is a writ of error brought by the State, seeking a reversal of the judgment of the City Court.  The defendant has filed a motion to erase the case from the docket.

Neither in our statutes nor in our Constitution are found any provisions concerning the right of the State to bring a writ of error in a criminal case, although there is a statute which provides that the State may, with the permission of the court, appeal to this court from the rulings or decisions of the Superior Court or any Court of Common Pleas. General Statutes, § 6494. We must recognize that, in the absence of constitutional or statutory provisions, the right of the State to take an appeal or bring a writ of error in a criminal case is denied in the great majority of American jurisdictions, including those under the Federal government.  *United States* v. *Sanges,* 144 U. S. 310, 12 Sup.

Ct. 609, and cases cited; *United States* v. *Evans,* 213 U. S. 297, 29 Sup. Ct. 507; 17 C. J. pp. 39, 44. In Maryland, however, a State the development of whose criminal jurisdiction has been quite like our own, it would seem that the State may bring a writ of error even from a judgment of acquittal after trial; *State* v. *Buchanan,* 5 Harr. & J. (Md.) 317; *State* v. *McNally,* 55 Md. 559; and in a number of jurisdictions where such a writ does not lie from a judgment of acquittal upon a trial, it is permitted in order to bring about a review of rulings based upon the insufficiency of an indictment or information as matter of law. *State* v. *Meyer,* 65 N. J. L. 233, 47 Atl. 485; *People* v. *Swift,* 59 Mich. 529, 541, 26 N. W. 694; *Commonwealth* v. *Catt,* 48 Pa. St. 53; *Commonwealth* v. *Moore,* 99 Pa. St. 570; *District of Columbia* v. *Horning,* 47 App. D. C. 413. We have never been called upon to determine whether the State may bring a writ of error in a criminal case or whether, aside from the provisions of § 6494 of the General Statutes, it might appeal. Paying due deference to the weight of authority in other jurisdictions, we still must decide the question before us as one of first impression in this jurisdiction.

The reasons usually advanced for denying the right of review to the State in criminal proceedings are that such a right was denied by the English common law, that such a proceeding has never been invoked in the particular jurisdiction, and that to permit a new trial after acquittal would subject the defendant to double jeopardy. As regards the first, it cannot be said with certainty that the English common law as it existed previous to 1776 did deny to the Crown all right to a review of criminal proceedings for the correction of errors occurring in the trial court. *State* v. *Lee,* 65 Conn. 265, 276, 30 Atl. 1110; *United States v. Sanges, supra,* p. 312; *State v. Meyer, supra; State v. Buchan-*

*an, supra.* But even if such a proceeding were denied by the English common law, that would not be conclusive upon us. This court has said, by BALDWIN, J., that "during the greater part of the Colonial era, the common law of England was not deemed to form a part of the jurisprudence of Connecticut, except so far as any part of it might have been adopted and introduced by her own authority." *Graham* v. *Walker,* 78 Conn. 130, 133, 61 Atl. 98. However, the doctrine came to prevail that "the English common law, so far as it was not unadapted to the local circumstances of this country, our ancestors, on their emigration hither, brought with them;" *Card* v. *Grinman,* 5 Conn. 164, 169; but that where we followed it, this was not by reason of any constitutional provision or statute, but because "this was our inheritance." *Baldwin* v. *Walker,* 21 Conn. 168, 181. "As our jurisprudence developed, the courts applied the principles of the common law to the decision of causes, so far as they seemed applicable to our social conditions." *Brown's Appeal,* 72 Conn. 148, 151, 44 Atl. 22. But we have never given to it a slavish adherence. An early authority apt to the question before us is the decision in 1786 in the case of *Wilford* v. *Grant,* Kirby, 114. In that action the plaintiff recovered a judgment for an assault against several defendants and certain of them brought a writ of error to reverse the judgment so far as it affected them. One of the questions presented was whether there could be a reversal of the judgment as to some only of the defendants. The court said (p. 116): "The common law rules of England are indeed against a reversal in part only, in a case like this, though it is admitted in others without any apparent diversity of reason; . . . but it doth not appear that this rule has been adopted in practice here, so as to become authoritative. The common law of England

we are to pay great deference to, as being a general system of improved reason, and a source from whence our principles of jurisprudence have been mostly drawn. The rule[s], however, which have not been made our own by adoption, we are to examine, and so far vary from them as they may appear contrary to reason or unadapted to our local circumstances, the policy of our law, or simplicity of our practice; which, for the reasons above suggested, we do in this case, and reverse the judgment as to minors only."

Moreover, the common law of England previous to 1776 is not necessarily the common law of Connecticut in 1934. No entirely satisfactory definition of the common law in effect at any particular time can perhaps be phrased, but it is not far from the mark to define it as the prevailing sense of the more enlightened members of a particular community, expressed through the instrumentality of the courts, as to those rules of conduct which should be definitely affirmed and given effect under the sanction of organized society, in view of the particular circumstances of the time, but with due regard to the necessity that the law should be reasonably certain and hence that its principles have permanency and its development be by an orderly process. Such a definition necessarily implies that the common law must change as circumstances change. "It is a well settled rule that the law varies with the varying reasons on which it is founded. This is expressed by the maxim, *'cessante ratione, cesset ipsa lex.'* This means that no law can survive the reasons on which it is founded. It needs no statute to change it; it abrogates itself. If the reasons on which a law rests are overborne by opposing reasons, which in the progress of society gain a controlling force, the old law, though still good as an abstract principle, and good in its application to some circum-

stances, must cease to apply as a controlling principle to the new circumstances." *Beardsley* v. *Hartford,* 50 Conn. 529, 541. The question before us cannot be solved solely upon the basis that the English common law recognized no right of review of errors committed in criminal proceedings, even if it could be said with certainty that this was so, but we must ask how such a rule would apply in the circumstances of life in this State and at this time.

That no writ of error, so far as appears, has ever been brought in a criminal case in this State is no doubt a circumstance to be considered, as to some extent indicative of the general sense of the community that no such proceeding properly lay and that there has been no great need felt for such a remedy. As far as the former consideration is concerned, it can be by no means conclusive that in the great reservoir of the common law there is not a remedy never before invoked, yet capable of use when the need arises; and as for the latter consideration, we must inquire not whether there has in the past been need for the remedy invoked, but whether under existing conditions there is need for it now. That there are cases where the State should have the right to secure a review in criminal proceedings was recognized in this State nearly fifty years ago when the right of appeal was given to it which is now authorized by General Statutes, § 6494. That right was and is restricted to cases in the Superior Court and Courts of Common Pleas, and then only when the trial court grants the State permission to appeal; but this limitation was made, no doubt, because it is ordinarily in those courts that the more serious offenses are tried, and perhaps, also, lest the proceeding be invoked in cases where neither justice nor the proper administration of the law would justify leaving an accused acquitted of crime in uncertainty

as to the final outcome of the case. But that there may be criminal cases of great public importance which might never get to this court for review under the statute, the case before us illustrates.

The City Court had final jurisdiction over the offense charged in the information, subject to appeal by the defendant, but not by the State, to the Criminal Court of Common Pleas. If, as happened here, a City Court in such a case finds an information insufficient in law, there is, unless a writ of error lies, no means by which that decision may be reviewed; and hence it may result that a duly enacted ordinance of a city may be made ineffective by a perhaps mistaken decision of a City Court, even when such important issues as the scope of constitutional guaranties are involved. Such a situation does not conduce to serve the public interest or the proper administration of justice. So there may well be cases where courts reach different conclusions as to the validity of a law and, barring such a remedy as is here invoked, if a defendant found guilty by one court did not see fit to appeal, there might result a lack of uniformity in the administration of the law which would be unfortunate. As was said in *State v. Buchanan, supra* (p. 330): "And there is no sufficient reason why the State should not be entitled to a writ of error in a criminal case. It is perhaps a right that should be seldom exercised, and never for the purpose of oppression, or without necessity, which can rarely, and it is supposed would never happen, and would not be tolerated by public feeling. But as the State has no interest in the punishment of an offender, except for the purpose of general justice connected with the public welfare, no such abuse is to be apprehended; and as the power of revision is calculated to produce a uniformity of decision, it is right and proper that the

writ should lie for the State, in the same proportion as it is essential to the due administration of justice, that the criminal law of the land should be certain and known, as well for the government of courts and information to the people, as for a guide to juries." In certain cases, at least, there is a real need of a means of review of decisions in criminal cases by this court at the instance of the State, not met by the appeal given by the statute.

That a review by a writ of error resulting in a reversal and retrial of a criminal case, does not subject an accused to double jeopardy, as we apply that principle, was conclusively settled by this court in *State* v. *Lee*, 65 Conn. 265, 30 Atl. 1110, in an opinion by HAMERSLEY, J. In that case the court sustained the validity of the statute giving a right of appeal to the State in criminal cases. We recognized that in this State there is no constitutional provision that an accused shall not be placed twice in jeopardy, without, however, questioning that the principle, properly applied, is one greatly in the public interest. We held that the entire proceedings—the original trial, the review, and the retrial, if awarded—constituted but one proceeding and one putting of the accused into jeopardy. We said (p. 271): "The function of courts is to settle controversies according to law. The object of settlement is secured by the principle of finality of judgments. *Finis finem litibus imponit.* The object of settlement in accordance with law, the same in all cases, is secured by the correction of errors in the application of law in each case. Neither object is inconsistent with the other. The end is not reached, the cause is not finished, until both the facts and the law applicable to the facts are finally determined. The principle of finality is essential; but not more essential than the principle of justice. A final settlement

is not more vital than a right settlement. . . . Owing to the confusion of principle with practice, a theory seems to have at times prevailed which assumes that the punishment of crime is a sort of invasion of natural right, and that a person accused of crime should be exempt from established rules of law binding on all other citizens; and therefore a procedure which proves incompetent to the correct application of legal principles in criminal trials can be changed like any other rules of practice when the change may tend to protect an accused from unjust punishment, but becomes a fundamental principle of jurisprudence that cannot be altered when the change may tend to secure his just punishment. It needs no argument to dispel such an illusion, or to demonstrate that the natural rights of the individual as well as the interests of public order are best served, and the essential principles of jurisprudence are most accurately followed, when the proceedings in a criminal prosecution include such protection against injustice that the final disposition of the cause will not only settle the controversy, but settle it in accordance with law. Judicious legislation for securing a full, fair and legal trial of each criminal cause, is not in derogation, but in protection, of individual right, and is in full accord with the principle that no man shall twice be put in jeopardy for the same offense. . . . Before the verdict is returned the trial court of its own motion can award a re-trial; after the verdict is returned, a re-trial is awarded only on further proceedings in the cause, which may or may not be authorized by the law regulating procedure. If such further proceedings are not authorized by law, the cause is ended, and the one jeopardy of the accused is exhausted; but this results *not* from any special sanctity attributable to a verdict tainted with illegality, but solely to the fact that the State, influenced by

considerations of public policy, has decided to make such verdict, whether just or unjust, the end of the controversy. But when the State sees fit to provide that the cause shall not necessarily be so ended, but that further proceedings on motion of the accused may be had, an unjust verdict resumes its normal position of a legal nullity; and when the State provides for like proceedings on the motion of the prosecutor, a similar result must follow."

We find in the reasons advanced in other jurisdictions denying a writ of error in criminal proceedings at the instance of the State no compelling reason for our adoption of a like conclusion, while, as we have indicated, there are strong reasons why in a proper case it should lie. The language of the statute authorizing writs of error to this court is not limited in terms to proceedings of a particular nature; it allows writs of error, for matters of law only, to be brought to this court from the judgments of the Superior Court, Courts of Common Pleas or any City Court. General Statutes, § 5705. It is to be borne in mind that a writ of error to this court presents only claimed errors apparent upon the face of the record. *State* v. *Caplan,* 85 Conn. 618, 622, 84 Atl. 280; *Geddes* v. *Sibley,* 116 Conn. 22, 24, 163 Atl. 596. Errors committed in the course of the trial and which require, upon an appeal, a finding of facts, or which, under our former procedure, might have been presented by a bill of exceptions, now have no place in a writ of error to this court. In holding that the writ lies in such a case as this we are, therefore, taking virtually the same position as that in effect in the jurisdictions of New Jersey, Michigan, Pennsylvania and the District of Columbia, as appears from the citations we have given earlier in this opinion. The limited character of the

questions which are open upon a writ of error goes
far to meet the danger of the remedy being improperly
invoked, the safe-guard against which, in the case of
an appeal, is the necessity of securing permission of
the court.

We have not overlooked the provision in § 5708 of
the General Statutes that writs of error shall be served
and returned "as other civil process" except in cases
where the defendant in error lives out of the State or
where the defendants in error are several petitioners
for a highway. Previous to the Revision of 1875 the
statutes contained specific provisions concerning the
method of serving writs of error and it was provided
that, if brought to this court, they should be served
and returned at least thirty days before the session of
the court to which they were returnable and, if brought
to the Superior Court, they should be served at least
twelve days before the return day "and returned as
other civil process." General Statutes, Rev. 1866,
pp. 44, 45. The provisions concerning the method of
serving writs of error, with the exceptions for which
provision is made in the present statute, were substan-
tially the same as the requirements for the service of
writs in ordinary civil actions. The revisers in pre-
paring the Revision of 1875 evidently changed the
phraseology to that now found in § 5708 as more con-
cisely stating the requirements for service and return
previously stated at length, and we cannot attribute
to the legislature an intent by the adoption of that
phraseology to make any essential change in the scope
of writs of error. Indeed, as late as 1892, we pointed
out that an accused in a criminal proceeding might in
a proper case bring a writ of error to this court. *State*
v. *Costello,* 61 Conn. 497, 500, 23 Atl. 868; see *State* v.
*Caplan,* 85 Conn. 618, 84 Atl. 280. Our conclusion is

that the writ of error before us was properly brought. The motion to erase is denied.

In this opinion the other judges concurred.