PHOENIX STATE BANK AND TRUST COMPANY v.
LeMOINE R. BUCKALEW, ADMINISTRATOR, ET AL.

SUPERIOR COURT        HARTFORD COUNTY        FILE No. 79554

Memorandum filed August 26, 1947.

Gross Hyde & Williams, of Hartford, for the Plaintiff.

Robinson, Robinson & Cole, of Hartford, R. T. Steele, of Hartford, for the Defendants.

TROLAND, J. This case involves the construction of an inter vivos trust of personal property created by William H. Bolles on June 26, 1911, under which the Phoenix State Bank and Trust Company is now the successor trustee.

On June 26, 1911, William H. Bolles, then a resident of Hartford, Connecticut, created an inter vivos trust of personal property wherein Elmer C. Quiggle was named trustee. On November 9, 1928, the Phoenix State Bank and Trust Company of Hartford was appointed successor trustee. William H. Bolles

died intestate on November 13, 1946, a resident of the state of New Jersey. He was survived by his widow, Edith Bolles, and five adult children, Evelyn B. Elder, Ethel B. Spencer, Muriel B. Sigretto, Watson P. Bolles and Phyllis B. Sackman. Le-Moine R. Buckalew was appointed administrator of the estate by the Probate Court for the district of Hartford on March 6, 1947.

The trust indenture gave the trustee an absolute discretion as to the payment to the settlor or his family of the income and principal of the trust, free from all control on the settlor's part, and it further provided that on the death of the settlor the trustee was "to pay over and distribute to my heirs-at-law whatever may then remain in the hands of said trustee or his successor either income or principal." The settlor did not reserve the right to revoke, alter or modify the trust indenture. At the time of his death there was approximately $100,000 in the hands of the successor trustee for distribution.

The primary question involved is whether under an inter vivos trust of personal property a grant to settlor for life and thereafter to the settlor's heirs creates a remainder in the heirs-at-law or a reversion in the settlor. Under the early English common law such a grant was ineffective to create a remainder but left a reversion which would pass by operation of law upon the grantor's death unless otherwise disposed of. 2 Blackstone's Commentaries 176; Bingham's Case, 2 Coke 91a, 76 Eng. Rep. R. 611, 613. This doctrine, known as the Rule in Bingham's Case or the doctrine of the worthier title, was abrogated in England more than one hundred years ago by statute. 3 & 4 Wm. IV, Chap. 106, § 3 (1833).

The defendant LeMoine R. Buckalew contends that under the doctrine of worthier title the principal and income in the hands of the trustee should be paid to him as administrator of the settlor's estate. The remaining defendants, being all the heirs of William H. Bolles, contend that the doctrine of worthier title is not a rule of law in the state of Connecticut and that if it exists, or is to be applied at all, it is a doctrine of construction.

Our ancestors never formally adopted the common law of England. But one attempt was made in that direction and that was abandoned without action. 4 Col. Rec. 261. As our jurisprudence developed, the courts applied the principles of the

common law to the decision of causes, so far as they seemed applicable to our social conditions. *Baldwin* v. *Walker,* 21 Conn. 168, 181; *Brown's Appeal,* 72 Conn. 148, 151.

Various reasons have been assigned by law writers of ancient days in England for the rule of doctrine of worthier title; one is the greater advantage to which lords of manors were formerly entitled where their tenants acquired their estates by descent; another, that descent is the title more favored and protected by the law; and third, that it is unnecessary to allege a gift of that which passes by law, according to the maxim, "Fortior et alquior est dispositio legis quam hominis." The rule appeared to be so objectionable to the commissioners appointed by his majesty, when they inquired into the law of England respecting real property in 1833, that as a result of their report it was abolished in England. 3 & 4 Wm. IV, Chap. 106, § 3.

This court is of the opinion that the doctrine of worthier title, as it existed in the common law of England, was not adopted in Connecticut and that it has not been and is not a rule of law binding upon the court. The political and legal institutions of Connecticut have, from the first, differed in essential particulars from those of England. Feudalism never existed here. There were no manors or manorial rights.

During the greater part of the colonial era, the common law of England was not deemed to form a part of the jurisprudence of Connecticut except so far as any part of it might have been accepted and introduced by her own authority. Later the doctrine received the sanction of the Supreme Court of Errors that it was brought here by the first settlers, and became the common law of Connecticut so far as it was not unadapted to the local circumstances of this country. *Card* v. *Grinman,* 5 Conn. 164, 168; *Graham* v. *Walker,* 78 Conn. 130, 133.

The words of Chief Justice Maltbie in *State* v. *Muolo,* 118 Conn. 373, 378, are enlightening where he says: "It is a well settled rule that the law varies with the varying reasons on which it is founded. This is expressed by the maxim 'cessante ratione, cesset ipsa lex.' This means that no law can survive the reasons on which it is founded. It needs no statute to change it; it abrogates itself."

Counsel, as a result of their research, have found no Connecticut cases or statutes on the specific point of law involved in this case. The doctrine of worthier title has completely lost

its significance in the solution of modern problems so far as devises are concerned. Restatement, 3 Property § 314, and comments.

If the reasons on which a law rests are overborne by opposing reasons which in the progress of society gain a controlling force, the old law, though still good as an abstract principle, and good in its application to some circumstances, must cease to apply as a controlling principle to the new circumstances. *Beardsley* v. *Hartford,* 50 Conn. 529, 541; *State* v. *Muolo, supra.*

As stated by Aaron Nassau of the Hartford bar in his article, "Some Feudal Relics in the Connecticut Land Law," 19 Conn. Bar J., 216, 233, referring to the doctrine of worthier title, among other rules,. "If these rules do exist here, it is only by inference and through dicta."

It is the opinion of this court that it should not undertake to introduce the principle for which the defendant Buckalew, Administrator, contends into our system at this late day, 104 years after it was abolished in the land where it originated and first was recognized.

An eminent Connecticut jurist, Chief Justice Hosmer, writing in 1823, stated, "It is my wish and my comfort to stand *super antipuas vias*: I cannot legislate; but by my industry, I can discover what our predecessors have done, and I will servilely tread in their footsteps." *Card* v. *Grinman, supra.*

Contrasting with this, we have the excerpt from the opinion of Chief Justice Maltbie in *State* v. *Muolo,* supra, and the following by Justice Oliver Wendell Holmes: "It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past." Holmes, "*The Path of the Law,*" 10 Harvard L. Rev. 457-469.

There is considerable support in the decisions of the courts of other states that the doctrine of worthier title continues to the present as one of construction, effective in determing the intention of the grantor when it is not otherwise clearly expressed.

In this case the language of the instrument of trust indicates that it was prepared by one well versed in the law. It is apparent from its terms that the settlor intended to create a spendthrift trust whereby he relinquished all control, both present

and future, over the income and principal. No power or right to revoke, alter or amend the trust agreement was reserved by the settlor. On his death he directed his trustee to pay over and distribute to his heirs-at-law whatever might then remain. Viewed as a whole, the instrument shows a clear intention on the part of the settlor, William H. Bolles, to place in trust all property and rights which he might have in the estate of his grandfather, William Bolles, deceased; to give free and complete control to the trustee over the property in the trust, granting to the trustee authority to meet various possible contingencies which might arise during the settlor's lifetime; and to dispose of this property to a class of persons that would be definitely ascertainable at the moment of his death. Such intention on his part, not being contrary to law, should be given effect.

The plaintiff is advised that the principal of the trust estate is distributable upon the death of William H. Bolles to his heirs-at-law. Said William H. Bolles being domiciled in the state of New Jersey at the time of his death, his heirs-at-law are to be ascertained in accordance with the laws of the state of New Jersey. The heirs-at-law, under the laws of New Jersey, are the widow of William H. Bolles, Edith Bolles, who takes a third interest in the trust property, and his children Evelyn B. Elder, Ethel B. Spencer, Muriel B. Sigretto, Watson P. Bolles and Phyllis B. Sackman, each of whom take an undivided two-fifths interest in the trust estate.

Judgment may enter in accordance with the foregoing opinion authorizing the successor trustee to make payment to the widow and the children in the proportions above set forth and not to the administrator of the estate of William H. Bolles.