NORMAN F. DACEY *v.* THE CONNECTICUT BAR ASSOCIATION

PARSKEY, SHEA, BRENNAN, DUPONT and B. O'NEILL, Js.

Argued March 13—decision released April 28, 1981

*Norman F. Dacey,* pro se, the appellant (plaintiff).

*Bernard S. Peck,* with whom were *Richard A. Johnson* and, on the brief, *Daniel D. Peck,* for the appellee (defendant).

PARSKEY, J. This is the second round in a libel action. The first trial resulted in a plaintiff's verdict of $60,000. Upon appeal we reversed and ordered a new trial. *Dacey* v. *Connecticut Bar Assn.,* 170 Conn. 520, 368 A.2d 125 (1976) (*Dacey I*). The second trial resulted in a defendant's verdict and the plaintiff has appealed.

At the second trial the plaintiff claimed that the trial judge, who was a member of the defendant association, was disqualified under General Statutes § 51-39,[1] and moved that he recuse himself from presiding at the trial. The denial of the plaintiff's motion is the principal basis for this appeal.

At the threshold we are confronted with the impact of *Dacey I* on the disqualification issue. The

---

[1] "[General Statutes] Sec. 51-39. DISQUALIFICATION BY RELATIONSHIP OR INTEREST. JUDGE MAY ACT WITH CONSENT OF PARTIES. When there is so near a relationship between any judge and any party in any proceeding in court before him, as between father and son, brothers or uncle and nephew, by nature or marriage, or landlord and tenant; or when any judge may be liable to contribute to the damages, costs or expenses of any such proceeding, or when he may receive a direct pecuniary benefit by the determination thereof, he shall be disqualified to act, except as herein provided. No judge

defendant contends that our earlier decision resolved this issue against the plaintiff. If the defendant's position is sound we need not get past the embryonic stage of this appeal because it is a well-recognized principle of law that the opinion of an appellate court, so far as it is applicable, establishes the law of the case upon a retrial, and is equally obligatory upon the parties to the action and upon the trial court. *Laurel, Inc.* v. *Commissioner of Transportation,* 173 Conn. 220, 222, 377 A.2d 296 (1977); *Gray* v. *Mossman,* 91 Conn. 430, 434, 99 A. 1062 (1917); 5 Am. Jur. 2d, Appeal and Error § 744. In *Dacey I* the plaintiff challenged the authority of the justices of this court to hear the appeal because they were all members of the defendant bar association.[2] The court decided that it could hear the matter because, a full court not being obtainable from among the judges of the Supreme and Superior Courts[3] who were not members of the bar association, the justices had a duty to hear and decide the appeal by necessity. *Dacey I,* supra, 524.

While there is language in *Dacey I* concerning the non-disqualifying effect of either a pecuniary

shall be disqualified to act in any proceeding by reason of his being a member of any ecclesiastical corporation, unless it is a party to the action, nor in any proceeding in which any town, city or borough is a party or interested, by reason of his being an inhabitant thereof or liable to taxation therein or by reason of his being related to any taxpayer or inhabitant thereof. When any judge is disqualified to act in any proceeding before him, he may act if the parties thereto consent in open court."

[2] None of the members of the court hearing this appeal is a member of the state bar association.

[3] General Statutes § 51-207 provides that in the case of the absence or disqualification of sufficient justices of this court a full court may be obtained by summoning judges of the Superior Court to serve as judges of the Supreme Court for the time being.

interest which is de minimis or mere membership in a state bar association, to the extent that a discussion of these issues was unnecessary to the holding in the case the language is mere dictum. *Diamond National Corporation* v. *Dwelle,* 164 Conn. 540, 544, 325 A.2d 259 (1973). The law of the case principle applies only to those matters essential to the appellate court's determination, not to mere dictum. *Barney* v. *Winona & St. Peter R.R. Co.,* 117 U.S. 228, 231, 6 S. Ct. 654, 29 L. Ed. 858 (1886); 5 Am. Jur. 2d, Appeal and Error § 753. The *Dacey I* court having determined the disqualification issue on the basis of necessity, the additional discussion was merely passing commentary. The rule of necessity would still obtain whatever the extent of the pecuniary interest of the individual justices and whether or not membership in a state bar association was a disqualifying element in every case where the association was a party. Because at the second trial other judges who were not members of the state bar association could have been assigned to the trial of the case there was no compelling reason for a bar association member to preside. In these circumstances, in addressing the disqualification issue on this appeal, we write on a clean slate.

### DISQUALIFICATION AT COMMON LAW

"The common law of disqualification, unlike the civil law, was clear and simple: a judge was disqualified for direct pecuniary interest and for nothing else." J. Frank, "Disqualification of Judges," 56 Yale L.J. 605, 609 (1947). Not only was the common law rule clear and simple, it was also strict. The judge was disqualified for any direct pecuniary interest no matter how small. The underlying principle was that no person should be a judge in his

own cause. Co. Litt.* 141a. Embraced within the rule was a judge who received a moiety of fines imposed by him; *Dr. Bonham's Case,* 8 Co. 226, 77 Eng. Rep. 638 (K.B. 1608); in a case tried before a mayor, a plaintiff who was chosen mayor after the verdict but before judgment; *Company of Mercers* v. *Bowker,* 1 Strange 639, 93 Eng. Rep. 751 (K.B. 1725); and a judge who was a town taxpayer in a case where the town was a party. *Between the Parishes of Great Charte and Kennington,* 2 Strange 1173, 93 Eng. Rep. 1107 (K.B. 1726). It required an act of parliament to remove the disqualification in the latter case. 16 Geo. II, c. 18 § 1 (1743).

Historically, our view of the relationship of the common law of England to the law of Connecticut has been conspicuous by its ambivalence. "During the greater part of the colonial era, the common law of England was not deemed to form a part of the jurisprudence of Connecticut, except so far as any part of it might have been accepted and introduced by her own authority. Stat., Ed. 1769, 1; Swift's System, 44." *Graham* v. *Walker,* 78 Conn. 130, 133, 61 A. 98 (1905). Later this court accepted the doctrine that the English common law "was brought here by the first settlers, and became the common law of Connecticut so far as it was not unadapted to the local circumstances of this country. *Card* v. *Grinman,* 5 Conn. 164, 168." *Graham* v. *Walker,* supra. In more recent years we seemed to have reverted to our earlier colonial thinking by asserting that the common law of England prior to 1776 does not necessarily represent the common law of this state; *State* v. *Muolo,* 118 Conn. 373, 378, 172 A. 875 (1934); even mutatis mutandis. We further defined our common law in our own terms as "the prevailing sense of the more enlightened

members of a particular community, expressed
through the instrumentality of the courts, as to
those rules of conduct which should be definitely
affirmed and given effect under the sanction of
organized society, in view of the particular circum-
stances of the time, but with due regard to the
necessity that the law should be reasonably certain
and hence that its principles have permanency and
its development be by an orderly process. Such a
definition necessarily implies that the common law
must change as circumstances change." Id.

Past applications of common law principles to
the question whether a judge should be disqualified
for interest have held that a judge's interest as a
town taxpayer was too inconsiderable and remote
to disqualify him in a case in which the town was a
party; *Church* v. *Norwich,* Kirby 140, 142 (1786);
but that he was disqualified as a stockholder in a
corporation. *Windham Cotton Man'g Co.* v. *H., P.
& F. R.R. Co.,* 23 Conn. 373, 384 (1854). We so
ruled in *Windham* on the basis of the ancient princi-
ple that a person cannot be a judge in his own cause.
Id. We need not speculate whether in the course
of time our common law approach would have
veered in the direction of the strict English view
because early on a statute concerning disqualifica-
tion was adopted.[4] Our present inquiry must focus
on that statute in light of its subsequent legislative
evolution and judicial interpretation.

### STATUTORY DISQUALIFICATION

Section 51-39 disqualifies a judge both for rela-
tionship and for interest. If the judge comes within
the statutory criteria, the disqualification is manda-

---

[4] A statute disqualifying judges for relationship was adopted in
1672. General Statutes of 1672, p. 42.

tory. The objective of the statute is to assure that the person who participates in any judicial proceeding in a judicial capacity is disinterested. *Groton and Ledyard* v. *Hurlburt,* 22 Conn. 178, 191 (1852). The relationship clause disqualifies a judge whenever he bears so near a relation to a party to a proceeding before him, as between father and son, brothers or uncle and nephew, by nature or marriage, or landlord and tenant. The specified relationships are not all inclusive; "as" here denotes similitude rather than definition. Cf. *Morgan Bond Co.* v. *Stephens,* 181 Okla. 419, 421, 74 P.2d 361 (1937); *Bolton's Estate,* 13 Phila. 340, 346 (1880) (Penrose, J., dissenting).

An examination of some of the relationships which are not included in § 51-39 but which are disqualifying nonetheless makes it clear that the statutory list is illustrative rather than exhaustive. Husband and wife are not specified in the statute but no one would seriously argue a judge's disqualification where his spouse was a party. Nor could it be contended that those relationships such as master and servant and attorney and client, which would conclusively disqualify a prospective juror; *McCarten* v. *Connecticut Co.,* 103 Conn. 537, 542, 131 A. 505 (1925); would not also disqualify the judge. "It is a well-recognized principle of natural justice that a man ought not to be a judge in his own case. Irrespective of any proof of bias or prejudice, the law presumes that a party to a dispute is not disinterested and does not possess the impartiality so essential to proper judicial action regarding it. This absolute disqualification to act rests on sound public policy. Any other rule is repugnant to a proper sense of justice." *Ellis* v. *Emhart Mfg. Co.,* 150 Conn. 501, 505–506, 191 A.2d 546 (1963).

With respect to corporations, the relationship of a stockholder to a private corporation is such that a judge who owns stock in a corporation appearing before him is disqualified to act. *Windham Cotton Man'g Co.* v. *H., P. & F. R.R. Co.,* 23 Conn. 373, 384, (1854). A judge who stands within the prohibited degrees of relationship to a stockholder is also disqualified. *Wood* v. *Hartford Fire Ins. Co.,* 13 Conn. 202, 211 (1839). In the case of public corporations such as towns we have held that a judge, as a town taxpayer, was disqualified to act in a case in which the town was a party. *Hawley* v. *Baldwin,* 19 Conn. 585, 590 (1849). This disqualification was removed by the legislature in 1863. Public Acts 1863, c. 36. We have also held that for some purposes members of ecclesiastical corporations are to be treated no differently than inhabitants of towns. *Atwater* v. *Woodbridge,* 6 Conn. 223, 228–29 (1826), overruled on other grounds in *Lord* v. *Litchfield,* 36 Conn. 116, 130 (1869). When the disqualification statute was amended in 1871 with reference to ecclesiastical corporations, it retained disqualification in cases where the corporation is a party. Public Acts 1871, c. 52. For the purpose of disqualification membership in a non-stock corporation should be treated no differently than membership in an ecclesiastical corporation. In short, when applying § 51-39 we treat stock and non-stock corporations alike. In both cases we look under the corporate carapace and view the stockholders or members as the real parties in interest.

The foregoing discussion demonstrates that the plaintiff's claim is meritorious. He raised the question of disqualification in a timely and appropriate manner. The defendant is a non-stock corporation organized under the laws of Connecticut. At the

time of trial, the trial judge was a member of the defendant association. Under General Statutes § 51-39, the judge was disqualified because of his relationship to a party, the defendant association.[5] This conclusion rests entirely on the statutory disqualification provision and does not imply any actual bias or prejudice on the part of the trial court. From the record before us, it is clear that the trial court was fair and evenhanded with both parties. Nonetheless, § 51-39 mandates disqualification because of the relationship between the judge and the defendant.

Implicit in our view of § 51-39 is a rejection of the approach taken by the Court of Appeals for the Fifth Circuit in *Parrish* v. *Board of Commissioners,* 524 F.2d 98 (5th Cir. 1975), cert. denied, 425 U.S. 944, 96 S. Ct. 1685, 48 L. Ed. 2d 188 (1976). *Parrish,* decided under 28 U.S.C. § 455, held that a trial judge's membership in an integrated state bar association[6] is not a ground for disqualification where the association is a party to an action tried before that judge. *Parrish,* supra, 103-104. The existence of an integrated bar in Alabama makes *Parrish* distinguishable from the present case on its facts. To the extent that the decision goes

---

[5] Because we decide this case on the ground of relationship, we have no occasion to address the defendant's contention that its resolution, designed to ensure that none of its members who passed on this case as judges would be called upon to contribute to any award of damages, effectively removed any disqualification based on pecuniary interest. Today's decision is based upon the relationship between a judge and a party created by the judge's membership in the defendant association. The financial arrangements which flow from membership are not material to our decision.

[6] Under the integrated bar concept, membership in the bar association is compulsory. *Parrish* v. *Board of Commissioners,* 524 F.2d 98, 104 (5th Cir. 1975). In Connecticut, significantly, bar association membership is voluntary.

beyond the facts and suggests that membership in a state bar association can never be a disqualifying relationship, we reject it as being incompatible with § 51-39.

Because the relationship provisions of § 51-39 are dispositive of the case, we need not address the effect of any pecuniary interest resulting from the judge's membership in the defendant association.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.